# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 24, 2016          Decided July 25, 2017

No. 15-7135

UNITED STATES OF AMERICA, EX REL. STEPHEN SHEA,
AND
STEPHEN M. SHEA,
APPELLANT

v.

CELLCO PARTNERSHIP, DOING BUSINESS AS VERIZON
WIRELESS, ET AL.,
APPELLEES

Consolidated with 15-7136

Appeals from the United States District Court
for the District of Columbia
(No. 1:09-cv-01050)

*Christopher B. Mead* argued the cause for appellant/cross-appellee. With him on the briefs were *Mark London* and *Stuart A. Berman.*

*Seth P. Waxman* argued the cause for defendants-appellees/cross-appellants. With him on the briefs were *Jonathan G. Cedarbaum* and *Daniel Winik.*

*John P. Elwood*, *Craig D. Margolis*, *Jeremy C. Marwell*, *Kathryn Comerford Todd*, and *Steven P. Lehotsky* were on the brief for *amicus curiae* The Chamber of Commerce of the United States of America in support of defendants-appellee/cross-appellants.

Before: SRINIVASAN and MILLETT, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*:  The False Claims Act penalizes the knowing submission of a false or fraudulent claim for payment to the federal government.  31 U.S.C. § 3729(a)(1).  Rather than rely solely on federal agencies to police fraudulent claims, Congress authorized private persons to bring what are known as *qui tam* actions.  In a *qui tam* suit, a private party, called the relator, challenges fraudulent claims against the government on the government's behalf, ultimately sharing in any recovery.

In this *qui tam* case, the relator is appellant Stephen M. Shea.  He alleges that Verizon Communications, Inc. violated the False Claims Act by overbilling the government in its telecommunications contracts.  Shea filed two *qui tam* suits against the company.  The first ended in a settlement under which Shea received a $20 million payout.  While that suit was pending, Shea brought a second *qui tam* action against Verizon, alleging that the company's fraud extended to twenty additional federal contracts.

The district court held that Shea's second suit violated the False Claims Act's "first-to-file" bar, 31 U.S.C. § 3730(b)(5), which prohibits a relator from bringing any action related to a pending *qui tam* suit.  The district court thus dismissed Shea's

second action.  But because Shea's first action had ended by that time, such that the first-to-file bar would no longer prohibit the filing of a new suit, the district court dismissed Shea's second action without prejudice to his refiling it.

Shea now appeals the dismissal of his action, contending that the district court should have allowed him to amend the complaint rather than require him to initiate a new suit. Verizon cross-appeals, arguing that the district court should have dismissed Shea's action *with* prejudice, such that he could not refile it.  In support of its argument for a dismissal with prejudice, Verizon relies on the False Claims Act's "public disclosure" bar, *id.* § 3730(e)(4), and on the pleading requirements established by Federal Rules of Civil Procedure 8 and 9(b).

We reject both Shea's arguments in his appeal and Verizon's arguments in its cross-appeal.  We therefore affirm the district court in all respects.

I.

A.

When bringing a *qui tam* action under the False Claims Act, a relator need not allege a personal injury.  *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-73 (2000).  Instead, she can bring suit "to remedy an injury in fact suffered by the United States."  *Id.* at 771, 774.  To encourage relators to bring suits on the government's behalf, Congress gave them a stake in the controversy:  they can share up to 30 percent of any proceeds ultimately recovered.  31 U.S.C. § 3730(d).  The government also can elect to intervene in, and assume control of, any *qui tam* action, in which event

the relator's share of the recovery becomes capped at 25 percent. *Id.* § 3730(b)(2), (d)(1).

Over time, Congress learned that the bounty available to *qui tam* relators created "the danger of parasitic exploitation of the public coffers." *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994). To curtail abusive suits, Congress established "a number of restrictions" on *qui tam* actions. *State Farm Fire and Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 440 (2016); *see United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 116 (D.C. Cir. 2015). This case involves two of those restrictions: (i) the first-to-file bar and (ii) the public disclosure bar.

The first-to-file bar operates on the recognition that, because relators can bring suit without having suffered a personal injury, countless plaintiffs in theory could file a *qui tam* action based on the same fraud and then share in the proceeds. And if multiple relators could split the recovery for the same conduct, they would have less "incentive to bring a *qui tam* action in the first place." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998). The first-to-file bar addresses that problem. It provides that, "[w]hen a person brings an action under [the False Claims Act], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The first-to-file bar thereby ensures only one relator will share in the government's recovery and encourages prompt filing from relators desiring to be first to the courthouse. *LaCorte*, 149 F.3d at 234.

The public disclosure bar similarly seeks "the golden mean" between, on one hand, encouraging relators with valuable information to bring suit, and, on the other hand,

discouraging unduly "opportunistic plaintiffs." *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294 (2010) (quoting *Springfield*, 14 F.3d at 649). Originally, the False Claims Act allowed *qui tam* relators simply to copy information already in the public domain. Indeed, in one landmark case, the relator parroted the government's *own* filings but still shared in the government's reward. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 545-48 (1943). In response, Congress established what became the public disclosure bar. The bar prohibits private parties from bringing suit based on a fraud already disclosed through identified public channels (unless the relator is "an original source of the information"). 31 U.S.C. § 3730(e)(4)(A).

## B.

In 2007, Shea filed a *qui tam* action against Verizon alleging that the company had knowingly charged the General Services Administration (GSA) for non-billable taxes and surcharges. Shea first became suspicious of Verizon while working as a consultant for commercial telecommunications customers. He learned that Verizon regularly overbilled its commercial customers for taxes, fees, and surcharges. Shea suspected Verizon of employing the same scheme against the government. After investigating, he allegedly confirmed that Verizon had billed the GSA for taxes and surcharges prohibited by its contract. The United States intervened in Shea's action. In February 2011, the parties settled the action without any admission of liability by Verizon. Shea received nearly $20 million in the settlement.

Before the parties settled Shea's first action (*Verizon I*), Shea apparently deduced that Verizon had used the same fraudulent billing scheme in twenty additional federal

contracts. Rather than amend his complaint, however, Shea brought a second *qui tam* action against Verizon (*Verizon II*). This time, the government chose not to intervene.

In 2012, the district court dismissed Shea's second *qui tam* suit with prejudice. The district court held that *Verizon II* was related to *Verizon I*, such that the False Claims Act's first-to-file bar blocked the later action. Although *Verizon I* had ended in a settlement the previous year, the court thought the first-filed suit permanently barred any related suit filed while the first action was pending.

Shea appealed, and a divided panel of this Court affirmed. The majority and dissent agreed that *Verizon II* was related to *Verizon I* and that the first-to-file bar thus supported a dismissal of *Verizon II*. The disagreement between the majority and dissent concerned whether the district court properly dismissed *Verizon II* with prejudice, such that Shea could not refile the action. The majority affirmed the district court's dismissal with prejudice because it interpreted the first-to-file bar to apply "even if the initial action is no longer pending." *United States ex rel. Shea v. Cellco P'ship*, 748 F.3d 338, 343 (D.C. Cir. 2014), *vacated*, 135 S. Ct. 2376 (2015). The dissent, reasoning that the first-to-file bar ceases to operate once the first-filed suit ends, believed that the dismissal of *Verizon II* should have been without prejudice. *Id.* at 345-51 (Srinivasan, J., concurring in part and dissenting in part).

The Supreme Court granted Shea's petition for certiorari and vacated this Court's decision in light of a related case, *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015). In *Carter*, the Supreme Court held that "a *qui tam* suit under the [False Claims Act] ceases to be 'pending' once it is dismissed." *Id.* at 1979. As a result, once a first-filed suit reaches completion, the first-to-file bar no

longer prohibits bringing a new action. *Id.* This Court remanded Shea's suit in *Verizon II* for further proceedings consistent with the Supreme Court's decision in *Carter*.

On remand, Verizon filed a renewed motion to dismiss. By that point, the six-year statute of limitations had arguably run on Shea's allegations of fraud. He thus resisted any dismissal of his action, even one without prejudice to his refiling it. Instead, Shea contended he could cure the first-to-file defect by amending his existing complaint in *Verizon II*. Indeed, Shea had already amended his complaint after *Verizon I* had settled. Shea argued that *Verizon I* no longer barred him from pressing forward with *Verizon II* under his amended complaint.

The district court disagreed. It held that "merely amending the Complaint could [not] remedy [Shea's] violation of the first-to-file bar." *United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16, 29-30 (D.D.C. 2015). Rather, the court determined that Shea would need to file a new *qui tam* action to proceed, and it thus dismissed his suit without prejudice to his doing so. At the same time, the court rejected Verizon's motion to dismiss *with* prejudice under either the public disclosure bar or Rules 8 and 9(b).

On appeal, Shea challenges the district court's dismissal under the first-to-file bar. Verizon cross-appeals the court's refusal to enter a dismissal with prejudice under the public disclosure bar or Rules 8 and 9(b).

II.

We first address whether the district court erred in dismissing Shea's suit under the first-to-file bar instead of allowing him to continue the action based on his amended

complaint.  The first-to-file bar specifies that, when a *qui tam* action is "pending," "no person other than the Government may intervene or bring a related action based on the [same] facts." 31 U.S.C. § 3730(b)(5).  The district court held that Shea's second *qui tam* action violated the first-to-file bar and that, to proceed, he must file a new action.  We agree.

### A.

Shea does not dispute that he brought his second action, *Verizon II*, while his first action, *Verizon I*, was pending.  Nor does he dispute that his second suit is "related" to his first within the meaning of the first-to-file bar.  We previously held that the actions shared "the same material elements of fraud," *Shea*, 748 F.3d at 341-42 (quoting *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003)), and Shea does not argue otherwise.

Consequently, were *Verizon I* still pending, we would require the district court to dismiss the follow-on suit under the first-to-file bar.  The "general rule" is that, "if an action is barred by the terms of a statute, it must be dismissed" rather than left on ice.  *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31 (1989).  When a statute specifies that an "action shall not be instituted" and the plaintiff fails "to heed that clear statutory command," a district court properly dismisses the suit.  *McNeil v. United States*, 508 U.S. 106, 107, 113 (1993).  The first-to-file bar, in specifying that "no person . . . may . . . bring a related action" while a first-filed suit is "pending," 31 U.S.C. § 3730(b)(5), manifests just such a statutory command.

The Supreme Court recently confirmed as much in *Rigsby*, 137 S. Ct. at 442-43.  There, the Court considered a separate provision of the False Claims Act, 31 U.S.C. § 3730(b)(2), which requires a relator to file a *qui tam* action under seal.  *Id.*

at 439-40. The Court held that a violation of the seal requirement did not mandate dismissal. But in doing so, the Court contrasted the seal requirement with a "number of provisions [in the Act] that do require, in express terms, the dismissal of a relator's action." *Id.* at 442-43. It specifically cited section 3730(b)(5)—the first-to-file bar—as an example of a provision explicitly requiring dismissal. *Id.* In the ordinary course, then, the existence of a pending *qui tam* action should occasion the dismissal of a related action.

The only question in this case is whether the statutory requirement to dismiss the second action falls away in circumstances in which the action has yet to be dismissed by the time the first-filed suit reaches completion. At that point, we know from *Carter*, 135 S. Ct. at 1979, that the first-to-file bar would no longer block initiation of a related action. Consequently, although the first-to-file bar prohibited Shea from bringing *Verizon II* at the time he filed it, the bar no longer poses any obstacle to his refiling the action. Shea, however, would take *Carter* one step further. In his view, once his first-filed suit ended in settlement, the district court should have allowed him to cure the first-to-file violation by amending his existing complaint in *Verizon II* rather than dismissed the action with leave to refile it.

It is true that a plaintiff can often cure a pleading defect by amending the complaint. *See Mathews v. Diaz*, 426 U.S. 67, 75 n.9 (1976) (citing 28 U.S.C. § 1653). A supplemental or amended complaint, however, could not remedy Shea's violation of the first-to-file bar. Shea infringed the first-to-file bar by bringing a related action while his first-filed case remained pending. Although Shea's first-filed suit is no longer pending, a supplemental *complaint* cannot change when Shea brought his second *action* for purposes of the statutory bar.

This Court, in another context, has drawn a similar distinction between the complaint and the underlying action. We explained that the dismissal of a *complaint* without prejudice is non-final (and thus non-appealable) because the plaintiff can amend his pleadings and continue the litigation. *Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004). Yet the "dismissal without prejudice of an *action* (or 'case')," we held, "is a different matter," as it has "ended [the] suit as far as the District Court was concerned." *Id.* (emphasis in original) (quoting *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949)).

In light of that distinction, the filing of an amended complaint, while serving to modify the complaint, does not operate to end the action and begin a new one. It thus cannot alter when Shea brought his action—i.e., at a time when a related suit was pending. For purposes of the first-to-file bar, in short, Shea's action was incurably flawed from the moment he filed it.

An alternative understanding, as the Seventh Circuit has reasoned, would treat the text of the first-to-file bar "as if it read something like: While another action under this section is pending, no person . . . may continue to prosecute a related action." *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 362 (7th Cir. 2010) (internal quotation mark omitted). The statute, however, expressly forbids any person from "bring[ing]" (as opposed to "continuing") an "action" while the first suit is pending. *Id.* Shea did exactly that, and the appropriate remedy under the False Claims Act

for such a violation is a dismissal (albeit one without prejudice to his filing a new action). *See Rigsby*, 137 S. Ct. at 442-43.

B.

Shea seeks to resist the terms of the first-to-file bar by arguing that dismissing his action with leave to refile it—as opposed to allowing him to amend his existing complaint— would elevate form over substance. The First Circuit agrees, reasoning that dismissal in the circumstances of this case would be a "pointless formality." *See United States ex rel. Gadbois v. Pharmerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015). *But see Chovanec*, 606 F.3d at 362. Respectfully, we see things differently.

Shea's preferred rule not only is difficult to square with the statutory terms, but it also would give rise to anomalous outcomes. Under Shea's approach, if a relator brings suit while a related action is pending, her ability to proceed with her action upon the first-filed suit's completion could depend on the pure happenstance of whether the district court reached her case while the first-filed suit remained pending.

For instance, imagine a situation in which relators A, B, and C each file a *qui tam* action alleging the same fraud. Relator A reaches the courthouse first and his action therefore goes forward. Relator B reaches the courthouse second, but the district court determines his suit is blocked by the first-to-file bar and thus dismisses it per the ordinary course. *See Rigsby*, 137 S. Ct. at 442-43. Relator C files last, and shortly thereafter, the first-filed action is dismissed. But suppose relator C filed her suit so late in the game that the district court fails to dismiss her action before dismissing the first-filed suit. Under Shea's proposed rule, relator C would receive a windfall: she, unlike relator B, could simply amend her existing complaint and

thereby secure herself pole position in the first-to-file queue. Relator C would jump past relator B for the opportunity to proceed with her suit (and to share in the government's reward).

Congress presumably would not have intended a relator's fate to depend on chance considerations such as the extent of a particular court's backlog and the timeliness of a particular court's entry of a dismissal. For that reason, adhering to the normal remedy of a dismissal for a first-to-file violation, *see id.*, would do more than advance a mere formality. It would level the playing field among relators consistent with the ordinary operation of the first-to-file bar as conceived by Congress.

Those circumstances differ from the ones considered by the Supreme Court in *Mathews*, 426 U.S. 67, on which Shea relies. There, the Court considered a statute requiring plaintiffs to commence civil actions within sixty days of receiving a final agency decision. *Id.* at 75 (citing 42 U.S.C. § 405(g)). Although the plaintiff initially filed his suit before seeking relief with the agency, he filed an application with the relevant agency while his action was pending in the district court. *Id.* The Supreme Court declined to require dismissal of the suit, noting that the complaint could still be supplemented to allege satisfaction of that condition. *Id.*

In *Mathews*, unlike here, there was no indication that dismissal would have served the "general purpose" of the statutory condition. *See Rigsby*, 137 S. Ct. at 443. Although the statute required the plaintiff to wait for a final agency decision, the Court concluded that the government had waived the exhaustion requirement by stipulating that the plaintiff's application to the agency would be denied. *Mathews*, 426 U.S. at 76-77. It therefore did not matter when the plaintiff filed that

application. Here, by contrast, for the reasons explained, adhering to the standard remedy of dismissal promotes Congress's contemplation of the ordinary operation of the first-to-file queue.

Similarly, Shea misses the mark in relying on *Oscar Mayer & Co. v. Evans*, 441 U.S. 750 (1979), and our decision in *Brown v. Whole Foods Market Group*, 789 F.3d 146 (D.C. Cir. 2015) (per curiam). Both decisions stayed pending actions to allow pro se litigants to satisfy conditions precedent to bringing suit. *Evans*, 441 U.S. at 764-65 & n.13; *Brown*, 789 F.3d at 153-54. Those cases dealt with atypical "statutory scheme[s] in which laymen, unassisted by trained lawyers, initiate the process." *Evans*, 441 U.S. at 765 n.13 (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)); *see Brown*, 789 F.3d at 153-54. In light of the unique circumstances, those decisions departed from the "general rule" that, "if an action is barred by the terms of a statute, it must be dismissed." *Hallstrom*, 493 U.S. at 31. By contrast, the Supreme Court has confirmed that the general rule of dismissal applies to violations of the first-to-file bar. *See Rigsby*, 137 S. Ct. at 442-43.

Shea argues that dismissal of his action could deter follow-on relators with valuable information from bringing suit, as relators might discount the probability of a reward against the risk of a dismissal. *See United States ex rel. Wood v. Allergan, Inc.*, No. 10-CV-5645, 2017 WL 1233991, at *14 (S.D.N.Y. Mar. 31, 2017). But district courts already must dismiss suits that infringe the first-to-file bar, at least as long as the first-filed suit remains pending. That is the very object of the bar. *See Rigsby*, 137 S. Ct. at 442-43. Accordingly, any would-be relator already faces the risk that "someone else ha[s] beaten her to the courthouse door." *See Wood*, 2017 WL 123991, at *14.

Moreover, relators ordinarily will be free to bring any follow-on action after the first-filed suit ends. First-filed cases do not last forever, and there might well be cases in which a first-filed suit is dismissed for reasons completely independent of the merits. The second relator can bring suit at that time and provide the government an additional means of recovery. *See Carter*, 135 S. Ct. at 1979. In the mine run of situations, therefore, our holding will have no effect on the second relator. Once the first-filed suit reaches completion, relators with original information about the fraud can simply bring a new action.

Of course, the statute of limitations can present an obstacle to bringing a new action in certain circumstances. Here, for instance, the six-year limitations period arguably ran on Verizon's alleged fraud. *See* 31 U.S.C. § 3731(b)(1). Thus, the statute of limitations could block Shea or other relators from refiling an action. Shea argues that we therefore should allow him to proceed with his amended complaint, which he purportedly brought after the first-filed suit terminated but before the statute of limitations ran.

Shea's situation, however, presents something of a procedural oddity. The limitations period continued to run while he was involved in protracted litigation of this case, litigation that has reached this Court twice and the Supreme Court once. In fact, Shea could have avoided any potential statute of limitations problem by amending his original *qui tam* action (*Verizon I*) to add the new allegations instead of bringing them in a new suit. He also could have filed a new action as soon as *Verizon I* settled rather than filing his amended complaint at that time.

To be sure, there may be cases in which the statute of limitations blocks a relator's claim "through no fault of his

own." *See Wood*, 2017 WL 1233991, at \*14. That possibility, though, already inheres in the False Claims Act's design. The government maintains an interest in enabling relators to bring suit on its behalf, at least to the extent the government is not already "equipped to bring [suit] on its own." *Hampton*, 318 F.3d at 217 (quoting *Springfield*, 14 F.3d at 651). Insofar as the statute of limitations can inhibit the vindication of that interest, that is by congressional design: a person must file suit either six years from when the fraud is committed or three years after the United States knows or should know about the material facts, whichever comes later (so long as the action is filed within ten years of the alleged fraud). 31 U.S.C. § 3731(b). The government can often act on the information before the statute of limitations has run, at least within ten years of the violation. Once the limitations period has run, however, Congress evidently considered the marginal value of additional suits to be outweighed by other considerations.

We note, finally, that Shea intends to seek equitable tolling of the limitations period if we uphold the dismissal of his action. Courts "have long invoked . . . equitable tolling to ameliorate the inequities that can arise from strict application of a statute of limitations." *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 275 (D.C. Cir. 2003). While we hold that the district court correctly dismissed Shea's suit without prejudice under the first-to-file bar, we express no view on the potential applicability of equitable tolling principles if he refiles his action.

III.

Although we uphold the dismissal of Shea's suit without prejudice under the first-to-file bar, Verizon asks for more. It argues for dismissal of Shea's action *with* prejudice under a separate provision of the False Claims Act, the public

disclosure bar. That bar prohibits a relator from bringing suit based on a fraud that has already been disclosed through certain public channels, unless the relator is an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A). The district court held that Shea did not base his allegations of fraud on publicly available information. The court thus had no occasion to reach the question whether Shea would qualify as an original source. Reviewing the district court's decision *de novo*, *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 86 (D.C. Cir. 2014), we reach the same conclusion.

At the outset, we note that the parties dispute which version of the public disclosure bar governs. At the time Shea filed his action in 2009, the public disclosure bar deprived courts of jurisdiction over any action "based upon the public disclosure of allegations or transactions" of fraud, except when "the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4) (2006). In 2010, Congress amended the public disclosure bar, including by removing its express jurisdictional language. *See* 31 U.S.C. § 3730(e)(4) (2010). Verizon argues that, because the case was brought in 2009, the pre-amendment version applies. *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 n.1 (2011); *Graham Cty.*, 559 U.S. at 283 n.1; *United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 38 n.2 (D.C. Cir. 2014) (*Oliver I*). Shea responds that the current, non-jurisdictional version applies to the allegations in his amended complaint because he filed it after the 2010 amendment. We need not resolve the dispute because, even applying the pre-amendment version to all allegations, we hold in Shea's favor.

On the merits, we consider the application of the public disclosure bar "in the context of [Congress's] twin goals": "rejecting suits which the government is capable of pursuing

itself, while promoting those which the government is not equipped to bring on its own." *Springfield*, 14 F.3d at 651. Shea's suit falls in the second category. His action "contributed significant independent information" about a possible fraud. *Id.* at 653.

The public disclosure bar asks whether the relator's allegations are "substantially similar" to publicly available information. *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012) (quoting *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 682 (D.C. Cir. 1997)). One of our foundational decisions on the subject described the public disclosure bar in algebraic terms. We explained that an allegation of fraud (Z) consists of two "essential elements," a misrepresented state of facts (X) and a true state of facts (Y), such that $X + Y = Z$. *Springfield*, 14 F.3d at 654. If the allegation of fraud (Z) is not itself in the public domain, then the bar applies only if both X and Y are publicly known. *Id.* But while both elements must be public, the public information need not itself prove fraud. Rather, the information must alert the government to "the likelihood of wrongdoing." *Id.* (internal quotation marks omitted).

In Shea's allegations of fraud, the misrepresented state of facts (X) was that Verizon, under its contracts, would not bill the government for certain taxes and surcharges. The true state of facts (Y) was that Verizon nonetheless charged the forbidden taxes and surcharges. According to Shea, Verizon's charges were impermissible for various reasons. In some cases, Verizon's contracts were firm fixed-price contracts, which "include[d] all applicable Federal, State[,] and local taxes and duties." J.A. 21 (quoting 48 C.F.R. § 52.299-4(b)(1)) (internal quotation marks omitted). Shea alleged that Verizon effectively double-billed the government by separately charging it for fees already built in to the contract's fixed price.

In other cases, Shea acknowledged that the contract allowed Verizon to bill certain surcharges in addition to the fixed price. In those instances, however, he claims Verizon charged the government for taxes and surcharges beyond those allowed under the contract.

We agree with the district court that there was sufficient publicly disclosed information to infer X, the misrepresented state of facts (or, at least, Shea did not supplement the publicly available information with any of his own). To allege X, Shea relied on public regulations governing federal contracts as well as snippets of public contracts. From there, Shea consulted public databases to compile the names and numbers of twenty contracts between Verizon and the government. He then alleged, on information and belief, that those contracts included similar provisions disallowing certain taxes and surcharges. Consequently, Shea added only speculation to the publicly existing information, and we have held that a relator cannot overcome the public disclosure bar by contributing "speculation, background information or collateral research." *See United States ex rel. Oliver v. Philip Morris USA, Inc.*, 826 F.3d 466, 479 (D.C. Cir. 2016) (*Oliver II*) (internal quotation marks omitted).

But we, like the district court, reach the opposite conclusion about the true state of facts (Y). As to that element, Shea's allegations rest on the following logic: if (a) Verizon overbilled its commercial customers for certain surcharges and taxes, and (b) Verizon used the same billing practices for the government, then (c) Verizon must have billed the illegal surcharges and taxes in its government contracts. At each step, Shea based his claims on nonpublic information.

With regard to Verizon's commercial customers, Shea's allegations came from his firsthand knowledge of Verizon's

billing practices. His contention that Verizon used the same practices for its government contracts likewise relied on nonpublic sources. First, he obtained a document in 2004 from MCI Communications, a company later acquired by Verizon. Shea explained that the document enumerated all the taxes and surcharges collected by Verizon in its government contract with GSA, and he determined that the listed charges bore a very close resemblance to the fees charged by Verizon to its commercial customers, suggesting that Verizon passed along the same charges to both groups. Second, Shea discussed Verizon's billing practices with a former (and longtime) company employee, who reported that Verizon used the same billing system for commercial and government customers. According to the complaint, Verizon even lacked the ability to selectively withhold charges generally billed to all customers.

While Shea's central allegations about the true state of facts came from nonpublic information, we still must ask whether the complaint's allegations bear a substantial similarity to public information, including information "from the news media." 31 U.S.C. § 3730(e)(4) (2006). Neither party disputes that publicly available websites can fall in that category. Verizon also urges us to look beyond sources cited in Shea's complaint (as we may do when addressing a jurisdictional issue, *see Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005)). But even looking outside the complaint, we conclude that publicly available information failed to create an inference of fraud.

Verizon argues that Shea admitted in his deposition that he found mock-up invoices for government contracts online. Because neither Verizon nor Shea has reproduced the mock-ups, we can rely only on Shea's characterization of those documents in his deposition. He stated that the mock-up invoices were "not the actual monthly invoice[s]," but were

"mock-up presentations . . . used for training . . . the accounts payable people." J.A. 162. The mock-up invoices included a section for surcharges and taxes but did not "get into the [] nitty-gritty." J.A. 163. That the mock-up presentations included a subcategory for taxes and surcharges tells us little about whether Verizon in fact billed unlawful surcharges to the government. It was not necessarily fraudulent for Verizon to charge *some* taxes and fees to the government. The contracts prohibited only charges built in to the contract's fixed price, a subject on which the mock-up invoices shed little light.

At times, Shea's deposition suggests he saw specific taxes and surcharges in online contracts. For example, he thought one contract "was even more specific in terms of" surcharges and had a "recollection of a lot of the surcharges being named on documents." J.A. 164. Again, however, Shea never claimed he saw *unlawful* surcharges in any contract, and his statements therefore do not indicate a "likelihood" of fraud. *See Springfield*, 14 F.3d at 654.

Shea's complaint and deposition reference other publicly available documents, but each falls short of giving rise to an inference of fraud. For instance, Shea's complaint cites Verizon's Service Publication and Price Guide, which allegedly "confirm[ed] the company's practice of billing customers for a broad range of taxes." J.A. 47. By its own terms, however, that guide applies only to commercial customers. In his deposition, Shea added that he consulted Verizon's federal Contract User Guide, but it, too, lacks specific information about the company's billing practices. Instead, the User Guide merely advertised the products and services that Verizon offers the federal government.

Finally, Shea's complaint highlights a series of public modifications to one of Verizon's contracts. The

modifications, in his view, show that Verizon knowingly misled the government about charging prohibited regulatory fees, including a surcharge known as the Federal Universal Service Charge. The public modifications, however, in fact undercut the notion that Verizon committed fraud. In them, Verizon alerts the government that it would begin collecting charges to "help defray costs of taxes and governmental surcharges and fees imposed on us, . . . [including] a Regulatory Charge and a Federal Universal Service Charge." J.A. 56. The modifications thus tend to show that Verizon contracted with the government to charge the fees, not that it fraudulently billed the government.

Given that little public information suggested Verizon acted fraudulently, Verizon errs in relying on our decision in *Staples*, 773 F.3d 83. There, a relator alleged that office supply companies concealed their import of pencils from China in an effort to avoid antidumping tariffs. *Id.* at 84. The parties agreed that a public database contained the companies' misrepresentations to the government. *Id.* at 86-87. Additionally, public reports described the "giveaway characteristics" of Chinese pencils and also revealed three of the four principal defendants to be "possible" importers of Chinese pencils. *Id.* at 86, 88. The relator merely examined the defendants' pencils, observed the characteristics described in the report, and filed suit. *Id.* In those circumstances, the relator's allegations were based on public information so as to trigger application of the public disclosure bar.

Here, by contrast, Shea supplied the missing link between the public information and the alleged fraud. Unlike in *Staples*, in which a public report identified the telltale signs of fraud, Shea relied on nonpublic information to interpret each contract. Without Shea's nonpublic sources (the 2004 MCI document and the former Verizon employee), there was insufficient

information to conclude Verizon employed the same billing scheme for commercial and government contracts. When the relator "bridge[s] the gap by [his] own efforts and experience," the public disclosure bar does not apply. *Springfield*, 14 F.3d at 657. That is the case here.

IV.

Finally, we conclude that the district court did not abuse its discretion in declining to dismiss Shea's action with prejudice under Rules 8 and 9(b). Because the district court had already dismissed the suit without prejudice under the first-to-file bar, it considered only whether to dismiss *with* prejudice for failure to meet the pleading requirements. It declined to do so because it found that "Shea could cure any deficiency in [the complaint's] factual allegations with additional consistent allegations." *Shea*, 160 F. Supp. 3d at 31.

Under Rule 8, a complaint must allege sufficient facts, accepted as true, to state a claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For allegations of fraud, Rule 9(b) additionally requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Together, Rules 8 and 9(b) require a plaintiff to plead the time, place, and content of the fraud and to identify the individuals allegedly involved. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

Regardless of whether Shea's complaint meets those standards, we generally do not dismiss suits with prejudice for failing to plead fraud with particularity. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Rather, we "almost always" allow leave to amend. *Id.* (quoting *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986)). A court should dismiss with

prejudice only if it determines the plaintiff "could not possibly cure the deficiency" by alleging new or additional facts. *Id.* (internal quotation marks omitted).

Considered in that light, the district court did not abuse its discretion by allowing Shea to refile his action. Shea has outlined the basic mechanics of Verizon's alleged fraud, and he could potentially provide more detail about the "who," "what," "where," and "when" of the fraud as to each individual contract. *See Heath*, 791 F.3d at 125. Verizon counters that Shea admitted he did not know which taxes and surcharges each contract prohibited. Shea, though, admitted only that he did not know each contract's contents *with certainty*. And at the pleading stage, Shea need show only a "strong inference" of fraud. *Id.* at 126. At any rate, the district court correctly noted that Federal Rule of Civil Procedure 12(d) forbids considering facts beyond the complaint in connection with a motion to dismiss the complaint for failure to state a claim. And based on the face of the complaint, there was no abuse of discretion in the district court's conclusion that it would not be "futile" to allow Shea to re-file. *See Firestone*, 76 F.3d at 1209.

Verizon, finally, suggests that we convert its motion to dismiss into one for summary judgment. Under Rule 12(d), a court can do so only when "[a]ll parties [are] given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The district court considered a motion to dismiss, and there is no indication that Shea had a reasonable opportunity to present material outside of his complaint. We therefore decline to treat Verizon's motion as one for summary judgment.

24

* * * * *

For the foregoing reasons, we affirm the district court's dismissal without prejudice of Shea's action under the first-to-file bar. We also affirm the district court's denial of Verizon's motion to dismiss with prejudice under the public disclosure bar or Rules 8 or 9(b).

*So ordered.*