[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14109

_____

SHELDON CHO,

MD, Relators and on behalf of the States of Florida,
Colorado, Georgia, North Carolina and Texas,

DAWN BAKER,

Relators and on behalf of the States of Florida,
Colorado, Georgia, North Carolina and Texas,

                                        Plaintiffs-Appellants-
                                        Cross Appellees,

versus

SURGERY PARTNERS, INC., et al.,

2                    Opinion of the Court                    20-14109

Defendants,


H.I.G. CAPITAL, LLC,
H.I.G. SURGERY CENTERS, LLC,

Defendants-Appellees-
Cross Appellants.

————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:17-cv-00983-VMC-AEP

————————————

Before WILSON, LAGOA, Circuit Judges, and MARTINEZ[*], District
Judge.

WILSON, Circuit Judge:

The False Claims Act (FCA) allows private parties, known as
qui tam relators, to bring suit on behalf of the United States against
persons who submitted false claims to the government.  In this
case, Dawn Baker and Dr. Sheldon Cho (the Relators) allege that
H.I.G. Capital, LLC and H.I.G. Surgery Centers, LLC (collectively,

_____

[*] Honorable Jose E. Martinez, United States District Judge for the Southern
District of Florida, sitting by designation.

H.I.G. or the H.I.G. entities) spearheaded a fraudulent enterprise to submit false claims for reimbursement to Medicare and other government payors. The district court dismissed the claim without prejudice under the FCA's first-to-file bar, which prohibits relators from bringing a qui tam action while a related action is pending. On appeal, the Relators argue that the district court's first-to-file analysis was flawed because (1) it should have focused on the moment at which they filed their amended complaint rather than their original complaint, and (2) the earlier-filed action the district court relied on is unrelated to this suit. On cross-appeal, H.I.G. argues that we should convert the district court's dismissal without prejudice to a dismissal *with* prejudice for failure to state a claim and for failure to meet the heightened pleading standard required for allegations of fraud—grounds the district court did not address below.

After careful review and with the benefit of oral argument, we hold, first, that the FCA's plain language makes the original complaint—not the amended complaint—the proper point of reference for the first-to-file analysis. Second, we hold that this action is related to an earlier-filed action that alleged the same material elements of fraud. Therefore, we affirm the district court's dismissal of the complaint without prejudice pursuant to the first-to-file bar. Finally, we deny H.I.G.'s cross-appeal. Even assuming we could enlarge H.I.G.'s relief based on grounds the district court did not reach, we decline to do so.

## I.

We begin with an overview of the facts and procedural background of this case. Because this is an appeal from a motion to dismiss, we take as true the facts pleaded in the complaint and construe them in the light most favorable to the Relators. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

In 2009, H.I.G., an international private equity firm, purchased Surgery Partners, Inc., along with its subsidiaries and affiliates (collectively, Surgery Partners). Surgery Partners owned and operated a network of surgery and pain-management centers. At the time of the acquisition, an H.I.G. affiliate entered into a management contract with Surgery Partners, giving H.I.G. control over Surgery Partners' operation. Shortly thereafter, H.I.G. placed three of its representatives on Surgery Partners' Board of Directors. In 2011, H.I.G. and Surgery Partners formed a diagnostic testing business called Logan Laboratories, LLC (Logan Labs), which specialized in urine drug testing (UDT).

There are two types of UDT: qualitative, which can detect the *presence* of drugs in a patient's system, and quantitative, which can detect *how much* of a drug is in a patient's system. While quantitative UDT has the advantage of providing more information, it is often not medically necessary. And because it must be performed in a laboratory, by laboratory professionals, it is more expensive than qualitative UDT.

The Relators allege that Surgery Partners—under H.I.G.'s guidance—consistently and routinely pressured its medical providers to refer patients to Logan Labs for quantitative UDT, regardless of whether qualitative UDT, the cheaper option, would have been sufficient. Making matters worse, the Relators say, Logan Labs would run excessive UDT panels, thus further increasing costs. Based on these UDT panels, Logan Labs then submitted claims for reimbursement to government healthcare programs, generating millions of dollars in payments. The Relators allege that H.I.G. caused this fraudulent overbilling, evidenced by the fact that it controlled Surgery Partners and Logan Labs during the relevant time period. Several H.I.G. executives who sat on Surgery Partners' Board of Directors allegedly furthered the fraud by manipulating Surgery Partners' electronic medical records (EMR) software to justify unnecessary UDT.

In April 2017, the Relators—a pain management specialist and a physician recruiter—filed a complaint under the FCA and several state fraud statutes alleging that dozens of defendants had engaged in a fraudulent scheme. The Relators amended their complaint as of right in January 2019. A year later, the United States intervened as to some defendants named in the action, but declined to intervene as to H.I.G.

Importantly, however, a separate group of relators had also filed an FCA action (hereinafter, the Ashton Action) under seal against Surgery Partners and Logan Labs in connection with the same fraudulent scheme, though they did not name the H.I.G.

entities as defendants. *See United States ex rel. Ashton v. Logan Laboratories, LLC, et al.*, Case No. 16-4583 (E.D. Pa. 2016). The Ashton Action was filed in August 2016—eight months before the Relators filed their initial complaint. The United States eventually intervened in the Ashton Action and reached a $41 million settlement agreement with four defendants, the Relators in this case, and the Ashton relators. The settlement agreement, announced in April 2020, contained a general release of FCA liability for Logan Labs' "current and former direct and indirect[ ] parent corporations . . . [and] corporate owners" based on the conduct described in the agreement. And specifically as to H.I.G., the agreement included a release of "liability against the H.I.G. Entities . . . for their own independent conduct outside their status as investors in or owners of" Logan Labs. The Ashton Action was then unsealed, and the settlement agreement became public.

Subsequently, the Relators in this case filed a second amended complaint narrowing their allegations to focus on H.I.G.'s conduct. The second amended complaint brought causes of action against the H.I.G. entities for violation of the FCA, 31 U.S.C. § 3729(a)(1)(A) and (B), and for conspiracy to violate the FCA, 31 U.S.C. § 3729(a)(1)(C). H.I.G. moved for dismissal on several grounds, including that (1) the FCA's first-to-file rule barred the claim; (2) the Relators failed to state a claim because they did not sufficiently allege that H.I.G. knowingly caused the submission of false claims; (3) the Relators failed to plead fraud with

particularity; and (4) the settlement agreement released H.I.G. from any liability.

The district court granted the motion, finding that the second amended complaint was barred by the FCA's first-to-file rule. Although the Relators filed the second amended complaint at a time when the Ashton Action was no longer pending, the district court held that the relevant question was whether the Ashton Action was pending at the time the Relators filed their *initial* complaint. Because the Ashton Action was pending at that time, the district court concluded that it barred the Relators' action so long as the two actions were related. The district court held next that the two actions were related because "they allege the same essential facts regarding the UDT fraud against the Government committed by Surgery Partners and Logan Labs." Accordingly, the district court dismissed the claim without prejudice.[1] The Relators appealed the district court's grant of the motion to dismiss.

## II.

We review de novo a district court's grant of a motion to dismiss. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). Likewise, we review de novo a district court's interpretation of a statute. *Id.*

---

[1] Because the first-to-file bar precluded the Relators' suit, the district court did not address H.I.G.'s remaining arguments.

### III.

We split our discussion into two parts.  First, we address whether the FCA bars a complaint that is (a) filed while a related action is pending, but (b) amended after the related action is dismissed.  Second, we determine the proper standard for analyzing whether a claim is related to a previously-filed action, and we apply that standard to the facts before us.

### A.

The Relators' first argument on appeal is that the FCA's first-to-file bar is inapplicable because the Ashton Action was no longer pending at the time the Relators filed the second amended complaint.  Under the first-to-file bar, "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  As other courts have observed, the first-to-file bar serves two related purposes: "to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim."  *In re Nat. Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956, 961 (10th Cir. 2009); *see also United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 169–70 (2d Cir. 2018).

Here, there is no dispute that the Ashton Action was still pending when the Relators filed their original complaint.  But when the Relators filed their second amended complaint, the

Ashton Action had settled, and therefore was no longer "pending." *See Kellogg Brown & Root Servs., Inc. v. United States, ex rel. Carter*, 575 U.S. 650, 664 (2015). The core issue, then, is whether it is the filing of a relator's original complaint or his amended complaint that informs our analysis of the first-to-file bar. Or, to frame the question another way: Can a first-to-file defect be cured by the filing of an amended complaint?[2]

We begin our analysis, as always, with the statutory text. In this case, it happens to be fairly straightforward: a person may not "bring a related action" while the first-filed action is pending. 31 U.S.C. § 3730(b)(5). We have held several times that the key phrase—to "bring" an "action"—"has a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit." *Harris v. Garner*, 216 F.3d 970, 973 (11th Cir. 2000) (en banc) (quoting Black's Law Dictionary 192 (6th ed. 1990)). Absent any indication to the contrary, "we readily presume that Congress knows the settled legal definition of the words it uses, and uses them in the settled sense." *Id.* at 974.

Applying that settled definition here, the statutory prohibition turns on the moment the Relators *initiated* legal

---

[2] We note that, in any event, the first-to-file bar will not prevent relators from bringing a new action once the earlier-filed action is no longer pending. However, other barriers such as the statute of limitations may present an obstacle in that scenario. *See United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 174 (2d Cir. 2018); *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 932 (D.C. Cir. 2017).

proceedings—not on the moment the Relators amended their complaint. As other circuits have recognized, "an amended . . . pleading cannot change the fact that [the relator] *brought* an action while another related action was pending."[3] *Wood*, 899 F.3d at 172 (citing *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923 (D.C. Cir. 2017)). Here, the Relators brought this suit while the Ashton Action was pending. Therefore, we hold that the first-to-file bar applies.

The Relators offer two counterarguments. First, they argue that the purpose of the FCA is to encourage more private enforcement, and that we should interpret the first-to-file bar narrowly in furtherance of that purpose. As we have explained, however, "[w]e interpret and apply statutes, not congressional purposes." *In re Hedrick*, 524 F.3d 1175, 1188 (11th Cir. 2008). And in any event, the FCA does not pursue a singular purpose. It pursues the "twin goals" of rewarding whistleblowers for bringing fraud to the

---

[3] Nearly every circuit to consider the issue has endorsed this reasoning. *See United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 206–07 (4th Cir. 2017); *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005); *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 362 (7th Cir. 2010); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004).

Though we acknowledge that the First Circuit reached the contrary conclusion, it did not explain how its reading comports with the plain language of the first-to-file bar. *See United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 3–4 (1st Cir. 2015). Therefore, we find that decision unpersuasive.

government's attention, while seeking to discourage opportunists who would enrich themselves by pursuing fraud the government already knows about. *See United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 649–51 (D.C. Cir. 1994). How best to mediate those competing interests is for Congress to decide, and Congress has spoken clearly here.

Second, the Relators argue that their interpretation of the first-to-file bar finds support in Supreme Court precedent and our own precedent. At the Supreme Court level, the Relators point to *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007), a case that involved the FCA's public-disclosure bar and its original-source exception. Under the then-applicable version of the statute, courts lacked jurisdiction over qui tam suits that were "based upon the public disclosure of allegations or transactions 'unless . . . the person bringing the action [was] an original source of the information.'" *Id.* at 460 (quoting 31 U.S.C. § 3730(e)(4)(A) (1994)). The relator in *Rockwell* amended his complaint but asked the Court to consider only his initial complaint in determining whether he was an original source. *Id.* at 473. The Supreme Court rejected that argument, holding that the word "allegations," as used in the public-disclosure bar, "includes (at a minimum) the allegations in the original complaint *as amended*." *Id.* (emphasis in original). The Court emphasized that a "demonstration that the original allegations were false will defeat jurisdiction." *Id.*

What we can take from *Rockwell* is that where the analysis turns on the *substance* of a relator's allegations in the public-

disclosure context, courts cannot ignore new, relevant allegations that reveal a jurisdictional defect.  But the crux of the issue here is *timing*.  The temporal question of when an action was brought (i.e., filed) remains unaffected by whatever new allegations a relator brings forward.  *See Wood*, 899 F.3d at 172.  Therefore, *Rockwell* does not help the Relators.

As to our own precedent, the Relators cite to *Makro Capital of America, Inc. v. UBS AG*, 543 F.3d 1254 (11th Cir. 2008), but that decision too is distinguishable.  In *Makro*, the original complaint was not a qui tam action under the FCA; it alleged non-FCA fraud and tort claims.  *Id.* at 1256.  After the plaintiff amended its complaint, restyling it as an FCA qui tam action, the district court granted dismissal based on the then-applicable government knowledge bar, 31 U.S.C. § 3730(b)(4) (1982) (repealed 1986), finding that the suit was based on information that was publicly available at the time of the amended complaint.  *Makro*, 543 F.3d at 1256–57.  On appeal, we agreed that the filing of the amended complaint was the proper reference point—but only because the original complaint had not been a qui tam action.  *Id.* at 1259.  We stressed the "disjunction" between the plaintiff's "original claim seeking personal recovery for fraud (and other torts)," and "its *qui tam* claim seeking recovery for fraud committed against the United States."  *Id.* at 1259–60.  Without that sort of disjunction here, our holding that the Relators first brought an FCA action when they filed their original complaint is not in tension with *Makro*.

As a result, we conclude that the FCA's plain text tethers our analysis to the moment a qui tam action is filed. When the Relators filed this qui tam suit, the Ashton Action was pending. Therefore, the Relators cannot evade the first-to-file bar by amending their pleading after the Ashton Action was dismissed.

**B.**

Having determined that the first-to-file bar applies to the filing of the original complaint, we now address the Relators' argument that, in any event, their complaint is unrelated to the Ashton Action.

We have not yet adopted a test for determining whether two qui tam actions are related. Both parties suggest that we follow our sister circuits in adopting the "same material elements" test, also called the "same essential elements" test, which the district court applied below. *See United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 363 (7th Cir. 2010) (collecting cases). Under this test, two actions are related if they "incorporate 'the same material elements of fraud.'" *Wood*, 899 F.3d at 169. That is, "to be related, the cases must rely on the same 'essential facts.'" *Id.* In applying this test, several circuits have compared the two complaints "side-by-side" and asked "whether the later complaint 'alleges a fraudulent scheme the government already would be equipped to investigate based on the first complaint.'" *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015) (alterations adopted); *see also Wood*, 899 F.3d

14                    Opinion of the Court                    20-14109

at 169; *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 303 (4th Cir. 2017).

As these courts have emphasized, this test finds support in the text of the FCA.  Under 31 U.S.C. § 3730(b)(5), the first-filed and later-filed claims need not be identical; they need only be "related." Drawing upon this distinction, the same material elements test creates a framework under which § 3730(b)(5) can still bar a later claim, "even if the allegations 'incorporate somewhat different details.'" *Heath*, 791 F.3d at 116.  Finding that this test aligns with the FCA's plain text, we adopt it here.

Our next task is to determine whether the district court correctly applied this test to conclude that the Relators' original complaint alleged the same essential facts as did the original complaint in the Ashton Action, which was pending at the time.[4]  The Relators contend that it did not for two reasons.  First, the Relators named the H.I.G. entities as defendants, whereas the Ashton Action did not.  Second, in addition to the Relators' substantive FCA claim, they alleged a conspiracy, which the Ashton relators did not allege.

---

[4] We compare the Ashton complaint to the Relators' original complaint for the reasons we outlined above.  But in any event, it does not appear that it would make any difference if we looked to the substance of the second amended complaint, as the Relators concede that the allegations set forth in their initial and second amended complaints are "virtually identical."

20-14109                Opinion of the Court                15

Beginning with the Relators' first contention, we disagree that the first-to-file bar requires a necessarily defendant-specific approach. Though we have no binding precedent on point, we find instructive the view of our sister circuits that adding a new defendant to the mix does not *necessarily* allow a later-filed action to evade the first-to-file bar, particularly where the new defendant is a corporate relative or affiliate of the earlier-named defendants. *See, e.g.*, *Nat. Gas Royalties*, 566 F.3d at 962; *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218 (D.C. Cir. 2003). What we must determine is whether the addition of a new defendant put the government on notice of a broader, more pervasive, or distinct scheme. Two cases from the D.C. Circuit, *Hampton* and *Heath*, serve as useful bookends for this analysis.

In *Hampton*, the earlier-filed action was brought against one corporate entity, HCA, alleging a "corporate-wide" fraudulent scheme that HCA carried out through its subsidiaries in thirty-seven states. 318 F.3d at 218. A later-filed action alleged that an additional HCA subsidiary perpetrated the same fraudulent scheme in six other states. *Id.* The court held that merely adding another corporate subsidiary did not amount to a difference in the material elements of the alleged fraud. *Id.* Therefore, the later-filed action was barred. At the other end of the spectrum is *Heath*. In that case, the earlier-filed action alleged that Wisconsin Bell, Inc., a subsidiary of AT&T, Inc., engaged in a scheme to defraud the government. *Heath*, 791 F.3d at 118. That scheme, according to

the earlier-filed action, was "limited" in scope and did not extend beyond Wisconsin. *Id.* at 121–122. The later-filed action, in contrast, "allege[d] a different and more far-reaching scheme to defraud the federal government through service contracts entered into across the Nation." *Id.* at 121. On these facts, the court held that the later-filed action alleged different material elements of fraud. *Id.* at 122–23.

These cases help illustrate that there is no bright-line rule as to whether naming an additional defendant states a different essential claim. We must determine whether the introduction of a new defendant amounts to allegations of a "different" or "more far-reaching scheme" than was alleged in the earlier-filed action. *See id.*

The Relators argue that their allegations are indeed broader than those in the Ashton Action. Specifically, they argue that their complaint puts the government on notice that the scheme "involved a unique breed of healthcare fraud, designed and directed by outside capital." But when comparing the Relators' complaint side-by-side with the Ashton complaint, the Relators' allegations do not meaningfully expand the scope of the UDT scheme or suggest that it was more pervasive than the Ashton Action indicated.[5] *See id.* Both complaints allege that: (1) Surgery Partners and Logan

---

[5] The district court properly took judicial notice of the Ashton complaint, which is publicly available, to establish the content of those allegations. *See Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1277 (11th Cir. 1999).

Labs were engaged in a scheme to order expensive and unnecessary quantitative UDT panels for patients at Logan Labs; (2) Surgery Partners paid kickbacks to physicians and pain management specialists to entice them to refer patients to Logan Labs for UDT; (3) Surgery Partners' EMR software was manipulated to support orders for unnecessary UDT; (4) Logan Labs ran these UDT panels; and (5) this scheme caused Logan Labs to submit millions of dollars' worth of fraudulent claims for reimbursement to government healthcare programs.

Taken as a whole, both complaints allege the same essential UDT scheme carried out by Surgery Partners and Logan Labs. Based on the Ashton Action, the government was already alerted to that scheme, and would have been equipped to investigate whether any corporate affiliates or investors connected to Surgery Partners and Logan Labs were participants. The Relators did not allege different material facts by naming H.I.G. as a defendant without making any allegations that would meaningfully magnify the scope or pervasiveness of the scheme.

In urging that we reach the contrary conclusion, the Relators analogize a case in the public-disclosure context: *Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562 (11th Cir. 1994) (per curiam). In *Cooper*, the question was whether public disclosure of industry-wide insurance fraud, as well as allegations against Blue Cross Blue Shield of Georgia (BCBSG) amounted to public disclosure of fraud by BCBSG's sister corporation—Blue Cross Blue Shield of Florida. *Id.* at 566–67. We held that it did not,

reasoning in part that "[r]equiring that allegations specific to a particular defendant be publically disclosed before finding the action potentially barred encourages private citizen involvement and increases the chances that every instance of specific fraud will be revealed." *Id.* at 566.

We find, however, that *Cooper* is distinguishable. To be sure, a public disclosure that one of a company's subsidiaries engaged in fraud may not alert the government to a parallel, distinct scheme by another subsidiary. But our facts are different. A comparison of the two complaints at issue here belies any notion that the Relators are alleging a fraudulent scheme distinct from the one alleged in the Ashton Action. The Relators allege that an additional player who was affiliated with Surgery Partners and Logan Labs had its hands in the same fraudulent scheme. The government would have been equipped, based on the Ashton Action, to investigate this matter. Therefore, the Relators' claim is related to the Ashton Action for purposes of the first-to-file bar.

Finally, the Relators' raise a separate argument that their FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) is unrelated to the Ashton Action, which alleged only substantive FCA violations. That argument can be dealt with in short order. Because the Relators' conspiracy claim is based on the same fraudulent scheme that was alleged in the Ashton Action, the government would have been equipped to investigate both substantive FCA violations and any conspiracies stemming from, or derivative to, the same scheme. *See Heath*, 791 F.3d at 121. Therefore, the Relators'

conspiracy claim is related to the Ashton Action and is barred by §
3730(b)(5).

## IV.

In conclusion, when relators file a qui tam action that is re-
lated to an already-pending action, that claim is incurably flawed
from the moment it is filed. Here, the Relators' claims focus on the
same fraudulent scheme at issue in the Ashton Action, which was
pending when the Relators brought this action. Therefore, the Re-
lators' claim is barred under the FCA's first-to-file rule. We affirm
the district court's dismissal without prejudice.

**AFFIRMED.**