17-2191-cv
*United States of America ex rel. Wood v. Allergan, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2017

(Argued: February 7, 2018     Decided: August 9, 2018)

Docket No. 17-2191-cv

UNITED STATES OF AMERICA EX REL. JOHN A. WOOD,
*Plaintiff-Appellee*,

COMMONWEALTH OF MASSACHUSETTS, STATE OF MONTANA, DISTRICT OF COLUMBIA, STATE OF INDIANA, STATE OF NEW YORK, COMMONWEALTH OF VIRGINIA, STATE OF LOUISIANA, STATE OF DELAWARE, STATE OF MINNESOTA, STATE OF OKLAHOMA, STATE OF MICHIGAN, STATE OF HAWAII, STATE OF NORTH CAROLINA,  STATE OF CALIFORNIA, STATE OF GEORGIA, STATE OF TENNESSEE, STATE OF FLORIDA, STATE OF WISCONSIN, STATE OF NEW MEXICO, STATE OF ILLINOIS, STATE OF NEVADA, STATE OF CONNECTICUT, STATE OF NEW JERSEY, STATE OF TEXAS, STATE OF COLORADO, STATE OF RHODE ISLAND,
*Plaintiffs*,

*v.*

ALLERGAN, INC.,
*Defendant-Appellant*,

ALLERGAN PLC,
*Defendant.*[*]

---

[*]     The Clerk of Court is directed to amend the caption as set forth above.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————

Before:

WALKER, LYNCH, and CHIN, *Circuit Judges*.

———————

Interlocutory appeal from an opinion and order of the United States District Court for the Southern District of New York (Furman, *J.*), holding that a violation of the False Claims Act's first-to-file bar, which prohibits the filing of a "related action" when a False Claims Act case is "pending," 31 U.S.C. §§ 3729(a), 3730(b)(5), can be cured by the filing of an amended complaint after the first-filed related action is no longer pending.

REVERSED AND REMANDED.

———————

DEREK T. HO, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C, Washington, D.C. (Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, Pennsylvania, W. Scott Simmer, Thomas J. Poulin, Simmer Law Group P.L.L.C., Washington, D.C., *on the brief*), *for Plaintiff-Appellee.*

JEFFREY S. BUCHOLTZ (Paul Alessio Mezzina, Christopher R. Healy, *on the brief*), King & Spalding L.L.P., Washington, D.C., *for Defendant-Appellant.*

SARAH CARROLL (Douglas N. Letter, Michael S. Raab, Charles W. Scarborough, *on the brief*), for Chad A.

2

Readler, Acting Assistant Attorney General, United States Department of Justice, Civil Division, Washington, D.C., *for Amicus Curiae* the United States, in support of Allergan, Inc.

Steven P. Lehotsky, Warren Postman, U.S. Chamber Litigation Center, Inc., Washington D.C.; John P. Elwood, Ralph C. Mayrell, Vinson & Elkins LLP, Washington, D.C., *for Amicus Curiae* the Chamber of Commerce of the United States, in support of Allergan, Inc.

Jacklyn N. DeMar, Taxpayers Against Fraud Education Fund, Washington, D.C.; Jennifer M. Verkamp, Maxwell S. Smith, Morgan Verkamp LLC, Cincinnati, Ohio, *for Amicus Curiae* Taxpayers Against Fraud Education Fund, in support of John A. Wood.

CHIN, *Circuit Judge*:

In this *qui tam* action, the relator, plaintiff-appellee John A. Wood, contends that defendant-appellant Allergan, Inc. ("Allergan"), a pharmaceutical company, violated the False Claims Act (the "FCA"), 31 U.S.C. § 3729 *et seq.*, through a kickback scheme that caused the United States (the "Government"), state governments, and the District of Columbia to make overpayments of Medicare, Medicaid, and other benefits.

Wood, however, was not the first relator to sue Allergan under the FCA based on this alleged scheme. Consequently, the district court (Furman, *J.*)

3

found that Wood's complaint violated the FCA's "first-to-file bar," which prohibits a person from bringing a "related action" when an FCA suit is "pending."  31 U.S.C. § 3730(b)(5).

In this interlocutory appeal, the issue presented -- a question of first impression for this Court -- is whether a violation of the FCA's first-to-file bar can be cured by the filing of an amended or supplemented complaint after the first-filed related action is no longer pending.  We hold that a violation of the first-to-file bar cannot be remedied by amending or supplementing the complaint.  Accordingly, we reverse and remand with instructions for the district court to dismiss the Third Amended Complaint -- the operative complaint -- without prejudice.

## *BACKGROUND*

### 1. *Statutory Background*

The FCA imposes significant penalties on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the Government or any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(A)-(B).

4

Rather than rely solely on federal enforcement of these provisions, Congress decided to deputize private individuals, encouraging them to come forward with claims on behalf of the Government in the form of *qui tam* suits. *Qui tam* provisions are not new to federal law, appearing as early as the first Congress. J. Randy Beck, *The False Claims Act and the English Eradication of Qui Tam Legislation*, 78 N.C. L. REV. 539, 554 n.54 (2000). In fact, the FCA and its *qui tam* provisions emerged "midway through the Civil War, in response to frauds perpetrated in connection with Union military procurement." *Id.* at 555.

Under the FCA's *qui tam* provisions, "a private party, called the relator, challenges fraudulent claims against the [G]overnment on the [G]overnment's behalf, ultimately sharing in any recovery." *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 926 (D.C. Cir. 2017); *see* 31 U.S.C. § 3730(b). The relator may be awarded up to thirty percent of the proceeds ultimately recovered. 31 U.S.C. § 3730(d). Relators need not allege personal injury but instead sue "to remedy an injury in fact suffered by the United States." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). The Government may intervene in any *qui tam* action, taking over from the relator,

and, in that event, limiting the relator's share of the recovery to at most twenty-five percent.  31 U.S.C. § 3730(b)(2), (d)(1).

The FCA provides that a "copy of the complaint . . . shall be served on the Government."  *Id.* § 3730(b)(2).  "The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.  The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information."  *Id.*  Moreover, the "Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal."  *Id.* § 3730(b)(3).  "Before the expiration of the 60-day period or any extensions," however, the Government shall "(A) proceed with the action, in which case the action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action."  *Id.* § 3730(b)(4).

The FCA includes several other limiting provisions, in part a response to the possibility that the large profits available to *qui tam* relators created "the danger of parasitic exploitation of the public coffers."  *United States*

*ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994). To limit such abuses, Congress established several restrictions on FCA *qui tam* actions. *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 440 (2016). One of these provisions, known as the "first-to-file bar," provides that "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or *bring a related action* based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5) (emphasis added). "The command is simple: as long as a first-filed complaint remains pending, no related complaint may be filed." *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011). The first-to-file bar ensures that only one relator shares in the Government's recovery and encourages potential relators to file their claims promptly. *See United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998).

2. *Factual Background*

Allergan is a pharmaceutical company that develops, manufactures, and markets health care products, including products relevant to cataract surgeries. Wood, a former Allergan employee, alleges that in the course of his employment he became aware that, from at least 2003 through 2011, Allergan

7

provided large quantities of free medical products to physicians to entice them to prescribe Allergan drugs, specifically to cataract patients, many of whom were beneficiaries of government-funded health programs (*e.g.,* Medicaid and Medicare). Wood contends that certain products were given to physicians who promised to begin prescribing or to increase their orders of Allergan products. Wood claims, *inter alia,* that these acts caused Medicare and Medicaid providers to present false claims for payment for Allergan drugs to the Government in violation of the FCA.

Wood filed this action, on behalf of the Government, twenty-five states, and the District of Columbia, on July 26, 2010. At the time, two other actions alleging similar FCA violations were pending. First, in October 2008, a relator filed an action in the United States District Court for the District of New Jersey alleging that Allergan induced physicians to prescribe Allergan-brand cataract products by sending them, *inter alia*, free surgical kits. *See United States ex rel. Lampkin v. Johnson & Johnson, Inc.,* No. 08-CV-5362 (D.N.J.). Second, in January 2010, a second relator filed a similar lawsuit against Allergan, in the United States District Court for the District of Columbia, concerning the

8

distribution of free patient kits.[1] *See United States and District of Columbia ex rel.*

*Caryatid, LLC v. Allergan, Inc.*, No 10-CV-46 (D.D.C**.).** Wood filed the instant

action on July 26, 2010, while both of these actions were pending, but under seal.

On July 27, 2011, the *Caryatid* complaint was unsealed. On February 16, 2012, the

United States declined to intervene and requested that the *Lampkin* complaint be

unsealed. Subsequent to Wood's filing, both *Caryatid*, on January 23, 2012 and

*Lampkin*, on December 14, 2012, were dismissed, for failure to properly serve

Allergan.[2]

In March 2016, the Government declined to intervene in this action

and the case was unsealed. On May 23, 2016, Wood filed the Third Amended

Complaint. Allergan moved to dismiss the Third Amended Complaint on

August 4, 2016.

As relevant to this appeal, Allergan argued that Wood violated the

first-to-file bar and that therefore the action should be dismissed pursuant to

---

[1]    There are several different names used by the various relators that appear to refer to the same set of products. Wood uses the term "Customer Care Kit," while Lampkin uses "surgical kit" and Caryatid uses "patient kit." All refer to a similar set of post-cataract treatment products, namely sunglasses, dressings, and carrying cases.
[2]    In *Lampkin*, though the claims against Allergan were dismissed for failure to serve, the claims against two other defendants, Alcon, Inc. and Alcon Laboratories, Inc., were dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(1) or alternatively 12(b)(6). *See United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 782, 788 n.7 (S.D.N.Y. 2017). The district court first determined that at the time of the filing of the lawsuit there was at least one pending related action (*Lampkin*), which had since been dismissed. *Id.* at 791. The district court next concluded that the first-to-file bar is not jurisdictional, and the action need not be dismissed pursuant to Rule 12(b)(1).[3] *Id.* at 794. Finally, the district court held that the first-to-file bar did not require dismissal of Wood's claims as there were no pending related actions when the complaint was amended (*i.e.,* the Third Amended Complaint), and therefore Wood's claims could proceed. *Id.* at 799 n.16. Noting that this final question was one of first impression for this Court, the district court granted leave for Allergan to file an interlocutory appeal. We accepted review.

## DISCUSSION

"We review *de novo* the denial of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted." *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015). "To survive

---

[3] This Court has since confirmed that the first-to-file bar is not jurisdictional. *United States ex rel. Hayes v. Allstate Ins. Co.*, 853 F.3d 80, 86 (2d Cir. 2017) ("[A] district court does not lack subject matter jurisdiction over an action that may be barred on the merits by the first-to-file rule.").

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

We consider first the threshold question of whether the first-to-file bar applies to this case. We conclude that it does. We then turn to the principal question on appeal: Whether a violation of the FCA's first-to-file bar can be cured by an amended pleading. We conclude that it cannot.

### 1. *Does the First-to-File Bar Apply?*

Wood contends that the first-to-file bar does not apply to his claims and asks this Court to affirm on the alternate grounds that his claims were the first to *adequately* allege a claim for relief under the FCA. Wood makes two arguments: First, the fraud he alleges is broader and more detailed than the earlier-filed suits and thus the actions are not related; and, second, the earlier-filed complaints were deficiently pled and, accordingly, do not trigger the first-to-file bar.

"A second action is 'related,' within the meaning of [Section 3730(b)(5),] if the claims incorporate 'the same material elements of fraud' as the earlier action, even if the allegations incorporate additional or somewhat

11

different facts or information."  *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015) (quoting *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003)).  In other words, to be related, the cases must rely on the same "essential facts."  *United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111, 117 (1st Cir. 2014) (collecting cases).  If the first-filed complaint ensures that the Government "would be equipped to investigate" the fraud alleged in the later-filed complaint, then the two cases are related within the meaning of Section 3730(b)(5).  *Heath*, 781 F.3d at 121.

Though Wood's allegations may be more detailed than those asserted in *Lampkin*, the two cases in essence alleged very similar kickback schemes.  *See id.* at 122 (citing cases where a second complaint "merely added additional facts or widened the circle of victims of the same fraudulent conduct" and thus, were related).[4]  Lampkin and Wood both allege a scheme where Allergan provided free cataract surgery recovery kits to induce increased use of Allergan products.  *Compare Lampkin*, No. 08-cv-5362 (D.N.J), Dkt. No. 1 at 4-5 (Allergan "paid kickbacks to doctors nationwide in the form of free surgical kits that have a greater than nominal value.  These free and valuable surgical kits

---

[4]    As *Lampkin* was the first-filed action and one related action will do, we need not consider whether *Caryatid* is also a related action under Section 3730(b)(5).

were routinely offered and delivered to physicians to induce the physicians to refer or arrange for a health care item or service to be provided and reimbursed by a federal health care insurance program. . . ."), *with Wood*, 10-cv-5645 (S.D.N.Y.), Dkt. No. 38 at 2 ("Allergan successfully induced ophthalmologists, including cataract surgeons, by providing, at no cost, a suite of cataract surgery-related goods, including prescription drugs, patient post-surgery supplies, physician-branded pre-printed prescription pads and prescription pad imprint stamps. . . .").[5] Accordingly, the district court properly concluded that *Lampkin* and *Wood* are related actions.

Next, Wood urges this Court to adopt the Sixth Circuit's approach in *Walburn v. Lockheed Martin Corp.*, which held that an earlier-filed complaint that was "legally infirm under [Federal Rule of Civil Procedure] 9(b)" fails to bar a "later-filed action despite the fact that the overly-broad allegations of the [first-filed] complaint 'encompass' the specific allegations of fraud made" by the later-

---

[5]    The *Lampkin* complaint was not included in the appellate record. On considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), however, we may consider documents "of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (noting that we may look at "matters of which judicial notice may be taken" when considering motions to dismiss under Rule 12(b)(6) (internal quotation marks omitted)).

filed complaint. 431 F.3d 966, 973 (6th Cir. 2005). We are not persuaded.

"Nothing in the language of Section 3730(b)(5) incorporates the particularity requirement of Rule 9(b), which militates against reading such a requirement into the statute." *Batiste*, 659 F.3d at 1210. Rule 9(b) and Section 3730(b)(5) serve different purposes, the former intending to protect defendants in fraud cases from "frivolous accusations" and the latter designed to reward a *qui tam* relator for putting the Government on notice of a potential fraud without the dilution of "copycat actions that provide no additional material information." *Id.*

Additionally, the Sixth Circuit's rule would require one court to evaluate the sufficiency of a complaint pending before another court, creating a precarious dynamic. *Id.; see also United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 n.10 (5th Cir. 2009) ("The sufficiency of the [earlier] complaint under Rule 9(b) is a matter for [the court the complaint is before] to decide in the first instance."). To illustrate the problem, consider how the following scenario could play out if Wood's (and the Sixth Circuit's) view were adopted: Suppose a relator in New Jersey files a complaint alleging a fraud. Several months later, a relator in New York files a similar complaint. The New York district court may then, before the New Jersey court has evaluated the

14

sufficiency of the complaint before it, conclude that the New Jersey complaint is deficiently pled and allow the New York action to proceed. Later, the New Jersey court may reach the opposite conclusion, allowing what it has determined to be a sufficient complaint to also proceed. Such a system would be unworkable.

Accordingly, we agree with the district court that the first-to-file bar applied here. *See Wood*, 246 F. Supp. 3d at 792 ("[A]s long as *Lampkin* was a 'pending action,' . . . as it was when Wood filed his original complaint (and first two amended complaints), the first-to-file bar applied.").

### 2. *Can a Violation of the First-to-File Bar Be Cured?*

Wood next contends that even if a "related action" was "pending" when he initially filed his complaint, once the related action was dismissed and no longer "pending," he was entitled to file an amended or supplemental complaint to cure the violation of the first-to-file bar. The issue may be significant because of the statute of limitations: If a violation of the first-to-file bar cannot be cured by the filing of an amended or supplemental complaint after the earlier related action is no longer pending, the statute of limitations may run

15

on the later-filed case before the first-filed case has been disposed of.  *See* 31

U.S.C. § 3731(b).[6]

      We are not the first court to be presented with this question:  The

First and D.C. Circuits have considered it and come to different conclusions.

*Compare Shea*, 863 F.3d at 926(dismissing amended complaint as blocked by first-

to-file bar), *with United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 4-5

(1st Cir. 2015) (finding defendant's position that supplementation cannot cure

first-to-file defect "untenable"); *see also United States ex rel. Chovanec v. Apria*

*Healthcare Grp., Inc.*, 606 F.3d 361, 362 (7th Cir. 2010) (in deciding whether a

complaint filed in violation of first-to-file bar should be dismissed with or

without prejudice, noting that "'a related action based on the facts underlying the

pending action' must be dismissed rather than stayed").  The Fourth Circuit has

held that the first-to-file bar requires dismissal of a later-filed action even if the

---

[6]     Section 3731(b) provides that:
     A civil action under section 3730 may not be brought -- (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

first-filed action is dismissed while the later-filed action is still pending; it has not decided whether amending or supplementing a complaint after dismissal of the first-filed action allows the later-filed action to proceed. *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 212 (4th Cir. 2017) (Wynn, *J.* concurring), *cert. denied,* -- S. Ct. --, 2018 WL 587746 (mem.) (June 25, 2018) ("[T]he majority opinion does not address, much less adopt, the district court's reasoning that an amendment or supplement to a complaint cannot, as a matter of law, cure a first-to-file defect."); *see also United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001). We agree with the D.C. Circuit and conclude that Wood's "action was incurably flawed from the moment he filed it." *Shea*, 863 F.3d at 930.

When answering questions of statutory interpretation, we begin with the language of the statute. *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) ("Every exercise in statutory construction must begin with the words of the text."). If the statutory language is unambiguous, "we construe the statute according to the plain meaning of its words." *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013). We discern plain meaning by "looking to the statutory scheme as a whole and placing the particular provision within the context of that

statute." *Saks*, 316 F.3d at 345. Only when the terms are ambiguous or unclear do we consider legislative history and other tools of statutory interpretation. *Nwozuzu*, 726 F.3d at 327.

We begin with the language of the statute. Section 3730(b)(5) provides:

> When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5).

By its express terms, then, no private individual "may . . . bring a related action" when an FCA action is "pending." While the statute does not include a provision mandating dismissal when there is a violation, the clear import of the language is that dismissal is required. "As a general rule, if an action is barred by the terms of a statute, it must be dismissed." *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31 (1989). Accordingly, absent any exceptions, when a plaintiff fails to heed a "clear statutory command," the district court ought to dismiss the suit. *See McNeil v. United States*, 508 U.S. 106, 113(1993) (holding that an action must be dismissed when statutory exhaustion requirement was not met until after action was filed). Indeed, when the Supreme Court recently held that

18

a violation of the FCA's sealing requirement did not require dismissal, it gave Section 3730(b)(5) as an example of one of "a number of provisions [in the FCA] that do require, in express terms, the dismissal of a relator's action." *Rigsby*, 137 S. Ct. at 442-43; *accord Shea,* 863 F.3d at 929 (noting that the Supreme Court "specifically cited section 3730(b)(5) -- the first-to-file bar -- as an example of a provision explicitly requiring dismissal.  In the ordinary course, then, the existence of a pending *qui tam* action should occasion the dismissal of a related action." (citation omitted)).  Under the terms of the statute, dismissal is the obvious response to an improperly filed action -- to permit the action to continue would be to ignore the violation.

Wood's position that a violation of the first-to-file bar can be cured by the filing of an amended pleading is inconsistent with the language of the statute.  In essence, he argues that Section 3730(b)(5) provides that "[w]hile another action is pending, no person other than the Government may continue to prosecute a related action," and contends that a second action can simply be stayed until the first-filed action is no longer pending. *Chovanec*, 606 F.3d at 362.  But that is not what the statute says. *See id.*  Rather, the statute bars a person from *bringing* -- not continuing to prosecute -- a related action during the

pendency of an FCA case, *see* 31 U.S.C. § 3730(b)(5) ("When a person *brings* an action under [the FCA,] no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." (emphasis added)), and it makes no provision for a stay of proceedings until the prior-filed action is resolved. The first-to-file bar is thus clear: an action cannot be *brought* while a first-filed action is pending.

In construing the term "bring," we "proceed under the assumption that the statutory language, unless otherwise defined, carries its plain meaning," *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015) (internal quotation marks omitted); *see also Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, -- U.S.--, 135 S. Ct. 1970, 1978 (2015) (seeing "no reason not to interpret the term 'pending' in the FCA [31 U.S.C. § 3730(b)(5)] in accordance with its ordinary meaning"). To "bring an action" is to "institute legal proceedings." *Black's Law Dictionary* 231 (10th ed. 2014); *see also Goldenberg v. Murphy*, 108 U.S. 162, 163 (1883) ("A suit is brought when in law it is commenced."). Legal proceedings are instituted by the origination of formal proceedings, such as the filing of an initial complaint. *See Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 451 (5th Cir. 2013) (Smith, *J.*, dissenting) ("In

20

the context of federal law, a suit is brought … by filing a complaint with the court." (citing Fed. R. Civ. P. 3) (internal quotations marks omitted)). Therefore, amending or supplementing a complaint does not *bring* a new action, it only *brings* a new complaint into an action that is already pending. *Chovanec*, 606 F.3d at 362 (statutes structured in the form "'do not bring an action until' . . . are understood to forbid the commencement of a suit; an action . . . 'brought' while the condition precedent is unsatisfied must be dismissed rather than left on ice").

The statutory command is not ambiguous: a claim is barred by the first-to-file bar if at the time the lawsuit was *brought* a related action was pending. Accordingly, even after Wood filed the Third Amended Complaint, his action still violated the first-to-file bar because he instituted legal proceedings, by filing the initial complaint, while a related action was pending.[7]

As Wood suggests, it is true that deficiencies in a complaint can often be cured by amendment. *See Mathews v. Diaz*, 426 U.S. 67, 75 n.9 (1976) (citing 28 U.S.C. § 1653). The problem for Wood, however, is that an amended or

---

[7]    As we decide that Wood cannot remedy a first-to-file defect by amendment or supplementation, we need not address Wood's argument that his Third Amended Complaint relates back for statute of limitations purposes. We do note, however, that this suggestion betrays the internal inconsistency in Wood's position and indicates that, though he wishes to proceed on the amended complaint, he still understands his action to have been *brought* at a time when it was in violation of the first-to-file bar.

supplemental pleading cannot change the fact that he *brought* an action while another related action was pending, as is prohibited by the first-to-file bar. *See United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16, 30 (D.D.C. 2015), *aff'd*, *Shea*, 863 F.3d 923 ("The first-to-file bar prohibits bringing a 'related *action*,' not a related *complaint*. . . . No matter how many times [a later-filing relator] amends his Complaint, it will still be true that he brought a related action based on the facts underlying the then *pending* action." (emphasis in original) (internal quotation marks, brackets, and citation omitted)).

The statutory scheme as a whole, and the placement of Section 3730(b)(5) within the context of the FCA, confirms what the language plainly states. A rule that would permit a violation of the first-to-file bar to be cured by the filing of an amended or supplemental pleading would pose serious administrative concerns and disrupt the orderly operation of the FCA. As the D.C. Circuit explained, for example, "if a relator brings suit while a related action is pending, her ability to proceed with her action upon the first-filed suit's completion could depend on the pure happenstance of whether the district court reached her case while the first-filed suit remained pending." *Shea*, 863 F.3d at 930. That could create anomalous results among similarly situated relators based

22

on the idiosyncrasies of the judge the case is before or the district the case is in.

*Shea* went on to illustrate:

> For instance, imagine a situation in which relators A, B, and C each file a *qui tam* action alleging the same fraud. Relator A reaches the courthouse first and his action therefore goes forward. Relator B reaches the courthouse second, but the district court determines his suit is blocked by the first-to-file bar and thus dismisses it per the ordinary course. Relator C files last, and shortly thereafter, the first-filed action is dismissed. But suppose relator C filed her suit so late in the game that the district court fails to dismiss her action before dismissing the first-filed suit. Under [Wood's] proposed rule, relator C would receive a windfall: she, unlike relator B, could simply amend her existing complaint and thereby secure herself pole position in the first-to-file queue. Relator C would jump past relator B for the opportunity to proceed with her suit (and to share in the government's reward).

*Id.* (citation omitted).

Wood's proposed interpretation of the rule also has the potential to create problematic inefficiencies. For example, a district court may hold related cases indefinitely awaiting the potential dismissal of the first-filed action. *See id.* at 929 ("'[I]f an action is barred by the terms of the statute, it must be dismissed' rather than left on ice.'" (quoting *Hallstrom*, 493 U.S. at 31)). Additionally, courts would face a wave of problematic questions. For example, if the first-filed action

23

is dismissed while the second-to-file and third-to-file actions are still pending, who gets to proceed as the new first-filed case? Is it the first to amend the complaint or the second to have filed the initial complaint? If the amended complaint relates back to the time of filing, then could the third-to-file move forward only to be stopped again once the second-to-file amends? These sorts of questions illustrate the conundrum posed by the rule endorsed by the district court. Such a system would also essentially make any statute of limitations obsolete. Relators could simply file unlimited related actions and keep each one "on ice" until the case before it is dismissed, allowing the next case to take its turn. *See Chovanec*, 606 F.3d at 362 ("Then § 3730(b)(5) would do nothing to block an infinite series of claims; me-too actions could proliferate, provided only that the copycat asked for a stay until the action ahead of it in the queue had been resolved."). That would force defendants to defend the same claim again and again.

Finally, although we need not rely on legislative history because the statutory language and scheme are clear, the legislative history also undercuts Wood's position. Allowing a first-to-file defect to be "cured" by amending or supplementing a complaint contravenes the FCA's purpose. Indeed, even if, as

24

the district court noted, "the primary, if not sole, purpose of the first-to-file rule is to help the Government uncover and fight fraud," it is unlikely that Congress intended to do so in an inefficient manner prone to anomalous outcomes. *Wood*, 246 F. Supp. 3d at 798; *see also Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 823 (9th Cir. 2005) (noting that the 1986 Amendments to the FCA, which introduced the first-to-file bar, were intended to "encourage more private enforcement suits" (quoting S. REP. No. 99-345, at 23-24 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5288-89)). "Congress presumably would not have intended a relator's fate to depend on chance considerations such as the extent of a particular court's backlog and the timeliness of a particular court's entry of a dismissal." *Shea*, 863 F.3d at 930.[8] Perhaps some relators may be barred from bringing meritorious claims when their actions are dismissed and then blocked by the statute of limitations. That risk, however, is always present when there is a statute of

---

[8]  When considering the purpose of the first-to-file bar. we note that the Government agrees with our reading of the statute and urges dismissal of the action -- perhaps a significant consideration, as the FCA is designed to promote the Government's interest. *See* Brief of the United States as *Amicus Curiae.* Though at oral argument before the district court the Government supported Wood, it has changed its stance on appeal, now arguing that "[t]he plain text of the statute compels" the conclusion that such actions be dismissed, as they will, even after amending or supplementing the complaint, have been brought while another related action was pending. *Id.* at 1.

limitations, and it is weighed against countervailing concerns of Congress. *See id.* at 932.

Wood, recognizing these practical concerns, argues that the rule we endorse today would deter relators from coming forward with claims. That, however, is unlikely. Because many claims remain under seal for a long time, relators are aware that their claims may very well be barred by the time they get to the courthouse, and our answer to the question before us today does not significantly alter the incentive structure to which would-be relators have become accustomed. The FCA's scheme is difficult for relators, who may substantially invest in claims, only to find out that a recently unsealed complaint blocks their action, months if not years down the road. This, however, is how Congress designed the statutory scheme, and it is carefully calibrated to strike "the golden mean between adequate incentives for whistle-blowing insiders . . . and discouragement of opportunistic plaintiffs." *Springfield Terminal Ry. Co.*, 14 F.3d at 649. Additionally, in many circumstances, absent a statute of limitations issue, the relator will be able to re-file her action, without violating the first-to-file bar.

Lastly, Wood asks us to consider whether equitable tolling should apply to his claim. It is very well possible that a future court would consider Wood's claim equitably tolled. It is not, however, a matter for this Court to consider at this time. Equitable tolling is not of concern in this case where the first-to-file bar, rather than the statute of limitations, is preventing Wood's claim from proceeding. *See Shea*, 863 F.3d at 932 (expressing "no view on the potential applicability of equitable tolling principles if [the relator] refiles his action").

Accordingly, we conclude that a first-to-file violation cannot be cured by amending or supplementing a complaint, even when the first-filed case is no longer pending, and that actions brought in violation of that rule should be dismissed without prejudice.

## *CONCLUSION*

For the reasons set forth above, we **REVERSE** and **REMAND** the case with instructions to dismiss the action without prejudice.