Richard J. Sullivan, District Judge:
Plaintiff, the State of New York ("New York"), brings this action against Defendant MedImmune, Inc. ("MedImmune") alleging violations of the New York False Claims Act and a variety of other New York state laws stemming from MedImmune's participation in a kickback scheme designed to boost sales of MedImmune's neonatal respiratory drug, Synagis. (Doc. No. 49 (the "Complaint-in-Intervention" or "Compl.") at ¶ 1.) Now before the Court is MedImmune's motion to dismiss the Complaint-in-Intervention for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Doc. No. 123.) For the reasons discussed below, MedImmune's motion is DENIED.
I. BACKGROUND
This case begins not with the New York Attorney General, but with Dr. Susan Vierczhalek ("Relator"), a licensed pediatrician and attending physician at Bellevue Hospital Center.[1] (Doc. No. 102 ¶ 44.) On April 17, 2009, Vierczhalek filed a qui tam complaint (Doc. No. 70 (the "Original Complaint" or "Original Compl.") ), on behalf of the United States and 19 states (the *549 "States")[2] against MedImmune, Trinity Homecare LLC ("Trinity"), and OptionCare ("OptionCare") - for violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a), and the States' FCA equivalents. (Original Compl. ¶¶ 18-23.) The theory underlying Vierczhalek's Original Complaint was that MedImmune, Trinity, and OptionCare violated the FCA by promoting so-called "off-label" uses of Synagis. (Original Compl. ¶¶ 3,4.) In other words, "the conditions that prompted the prescriptions of Synagis were not the FDA-approved indications, but rather a much more lenient set of broad criteria." (Id. ¶ 4.) According to Vierczhalek, the alleged off-label promotion "illegally influenced physicians to prescribe ... Synagis when they otherwise would not have prescribed [it]." (Id. )
Vierczhalek's case was stayed for a number of years as the States and the United States decided whether or not to intervene in the action. See 31 U.S.C. § 3730(b)(2) ; N.Y. State Fin. Law § 190(2)(b). On June 19, 2015, New York filed a notice of election to intervene, pursuant to N.Y. State Finance Law § 190(2)(b), as to Defendants Trinity and OptionCare. Concurrently with that notice, New York filed a proposed stipulation and order of dismissal, whereby Trinity and OptionCare jointly agreed to pay $22.4 million dollars. (Doc. No. 34 at 8.) All claims against Trinity and OptionCare were thereafter dismissed. (Doc. Nos. 35, 36.) Pursuant to whistleblower provisions of New York state law, Vierczhalek herself received $4,040,808.84 as part of the settlement. (Doc. No. 34 at 9.) Nevertheless, New York continued its examination of Vierczhalek's allegations with respect to MedImmune.
Thereafter, on March 31, 2017, New York elected to intervene and filed the Complaint-in-Intervention against MedImmune. (Doc. No. 49.) New York seeks to recover treble damages and civil penalties under the New York State False Claims Act, and to obtain a variety of other relief under related New York state law. (Id. ¶ 1.)
The theory of New York's Complaint-in-Intervention differs notably from the theory underpinning Vierczhalek's Original Complaint. Instead of focusing on off-label promotion, New York alleges that MedImmune engaged in a kickback scheme with Trinity, which resulted in Trinity presenting "false claims to Medicaid for Synagis from January 2007 through March 2011." (Compl. ¶ 3.) The gist of the scheme, as alleged, can be summarized as follows. Synagis is used to prevent the onset of lower respiratory tract disease caused by respiratory syncytial virus ("RSV"). (Compl. ¶ 69.) Synagis was approved by the FDA in 1998, and is prescribed to infants who are at risk of contracting RSV - ordinarily, babies who are born prematurely or who have heart or lung diseases. (Id. ) Trinity is a specialized pharmacy that "dispenses and delivers drugs to patient homes [and] provides or arranges for homecare services." (Id. ¶ 6.) It also "controlled the Medicaid business for Synagis in New York." (Id. ¶ 89.)
Thus, according to the Complaint-in-Intervention, MedImmune salespersons - dubbed the "Synagis people" by hospital staff (Compl. ¶ 132) - would curry favor with hospital administrators, including nurses and doctors, in order to gain access to the neo-natal intensive care unit ("NICU"). (Compl. ¶ 43.) That access allowed *550 MedImmune to obtain "confidential personal information about specific babies from NICU logbooks and hospital records." (Id. ¶ 4.) This information, otherwise known as protected health information ("PHI") (id. ¶ 12), typically included an infant's name, gender, date of birth, medical record number, gestational birth weight, and hospital notes, as well as the mother's name, address, insurance information, and phone number. (Id. ¶ 8.) Of particular interest to MedImmune (and to Trinity) was the PHI of babies born prematurely, as these infants would be prime candidates for Synagis. (Id. ¶ 101.) Once in possession of the PHI, MedImmune would pass the information along to Trinity so that Trinity could use it as "leads" for its pharmaceutical representatives. (Id. ¶ 8.) In other words, Trinity used the PHI to pursue patients who would potentially need Synagis. (Id. ¶ 94.)
After receiving the PHI, Trinity would contact the infant's pediatrician or parents and attempt to secure a prescription for Synagis. (Id. ¶ 94.) The end goal was to turn these PHI-leads into "Trinity customers for outpatient Synagis prescriptions." (Id. ¶ 95.) Trinity would then present Synagis claims for reimbursement through New York's Medicaid program. (Id. ¶ 96.) New York alleges that this scheme, which ran from 2007 to 2011 (id. ¶ 187), resulted in "millions of dollars of Synagis Medicaid claims presented by Trinity" (id. ¶ 120). MedImmune benefited as sales of Synagis increased.
On January 22, 2018, MedImmune moved to dismiss the Complaint-in-Intervention. (Doc. No. 124.) Specifically, MedImmune argues that New York has not adequately pleaded a violation of the state or federal anti-kickback statutes. MedImmune also argues that New York has failed to sufficiently demonstrate a violation of the New York False Claims Act or its other state law claims. The motion was fully briefed on June 4, 2018. (Doc. No. 191.)
II. LEGAL STANDARD
To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." ATSI Commc'ns, Inc. v. Shaar Fund. Ltd. , 493 F.3d 87, 98 (2d Cir. 2007) ; see also Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...."), To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns , 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly , 550 U.S. at 555, 127 S.Ct. 1955.
III. DISCUSSION
The Complaint-in-Intervention sets forth six causes of action. Counts 1 and 2 allege violations of the New York State False Claims Act ("NYFCA"), N.Y. State Finance Law § 189 ; Count 3 alleges a violation of New York Social Services Law § 145-b ; Counts 4 and 5 allege violations of *551 New York Executive Laws §§ 63(12) and 63-c ; and Count 6 alleges a claim for unjust enrichment under New York common law. The Court will address each in turn.
A. New York False Claims Act
The NYFCA makes liable any person who: "(a) knowingly presents, or causes to be presented[,] a false or fraudulent claim for payment or approval [or] (b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." N.Y. State Fin. Law § 189(1)(a), (b). The NYFCA also prohibits "conspir[ing] to commit a violation of paragraph (a) [or] (b) ..." N.Y. State Fin. Law § 189(1)(c). Here, New York accuses MedImmune of violating subsection (1)(b) of Section 189 (Compl. ¶ 193), and of a conspiracy to violate subsections (1)(a) and (1)(b) (Compl. ¶ 200).[3]
"To prove a false claim under [ Section 189(1)(a) ], a relator must show that the defendant '(1) made a claim, (2) to the [ ] government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury.' " United States v. N. Adult Daily Health Care Ctr. , 205 F.Supp.3d 276, 287 (E.D.N.Y. 2016) (citing Bishop v. Wells Fargo & Co. , 823 F.3d 35, 43 (2d Cir. 2016) ). Under subsection (1)(b), a plaintiff must allege both " '(i) a false record or statement, and (ii) a false claim' " for payment made to the Government." United States v. Icahn Sch. of Med. at Mount Sinai , No. 12-cv-5089 (GBD), 2015 WL 5472933, at *4 (S.D.N.Y. Sept. 16, 2015) (quoting United States ex rel. Feldman v. City of New York , 808 F. Supp. 2d 641, 655-56 (S.D.N.Y. 2011) ). Subsection 1(b) thus contains a so-called "double falsity" requirement because it requires the plaintiff plead "both a false statement and a corresponding false claim." United States ex rel. Kester v. Novartis Pharm. Corp. , 23 F.Supp.3d 242, 252 (S.D.N.Y. 2014). "When interpreting the NYFCA, New York courts rely on federal FCA precedent." Kane ex rel. United States v. Healthfirst, Inc. , 120 F.Supp.3d 370, 381 (S.D.N.Y. 2015).
The crux of the Complaint-in-Intervention is that MedImmune violated the NYFCA by causing Trinity to submit false Medicaid billing certifications to New York. (Compl. ¶ 194.) These certifications were allegedly false because while they represented that Trinity furnished Synagis in "compliance with all applicable State and Federal laws and regulations," Trinity and MedImmune were actually in violation of state and federal anti-kickback prohibitions. ( Id. )
Defendant argues that New York has failed to make out a claim for breach of the NYFCA on three grounds. First, MedImmune insists that New York has not pleaded a violation of New York State's anti-kickback statute, N.Y. Soc. Serv. Law § 366-f(1)(b), or the federal anti-kickback statute, 42 U.S.C. § 1320a-7b(b)(1)(A). Second, MedImmune asserts that the representations contained in Trinity's Medicaid billing certifications were too generic to constitute a false statement. And finally, MedImmune argues that the allegedly false statements were not material. The Court will address each of the three arguments in turn.
*552 1. Federal Anti-Kickback Statute
The federal anti-kickback statute proscribes "knowingly and willfully offer[ing] or pay[ing] any remuneration (including any kickback, bribe, or rebate) ... to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made ... under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2)(A), (B).
Under New York's theory of liability, MedImmune is the entity "offer[ing] or pay[ing] any remuneration," 42 U.S.C. § 1320a-7b(b)(2), and the "remuneration" is the PHI. The entity that "purchase[s], lease[s] or order[s] any good, facility, service or item for which payment is made," id. , is Trinity. And the "good" that is "purchase[d]" - or that one "recommend[s] purchasing" - is Synagis.
MedImmune argues that it did not violate the federal anti-kickback statute because the term "remuneration" does not encompass PHI. (Doc. No. 124 at 9, 10.) The statute, however, is not so narrow, and the Court sees no reason to read the word "remuneration," at least at this early stage in the litigation, to exclude PHI. Remuneration is defined under the federal statute as "transfers of items or services for free or for other than fair market value." 42 U.S.C § 1320a-7a(i)(6). The U.S. Department of Health and Human Services Office of the Inspector General ("HHS-OIG") has explained that remuneration may include "the offer or payment of anything of value for patient referrals." OIG Compliance Program Guidance for Pharmaceutical Manufacturers , 68 Fed. Reg. 23731-01 (May 5, 2003). And in an advisory opinion, HHS-OIG also suggested that "health care information, such as payer information, medical history, [and] diagnosis" could qualify as remuneration. Re: OIG Advisory Opinion No. 08-19 , 2008 WL 6067529, at *4 (Nov. 5, 2008).
Indeed, United States ex rel. Kester v. Novartis Pharm. Corp. , 41 F.Supp.3d 323 (S.D.N.Y. 2014), is instructive. In Kester , the federal government's complaint-in-intervention alleged that Novartis violated the federal False Claims Act because "it paid kickbacks to several pharmacies for promoting two drugs (Myfortic and Exjade) to physicians and patients in violation of" the federal anti-kickback statute. Id. at 326. According to the complaint in that case, Novartis sought to entice pharmacies to "recommend to physicians or patients" that they prescribe Novartis' drugs. Id. The supposed kickbacks were, in part, "patient referrals." Id. Importantly, Kester noted that patient referrals were "a form of 'remuneration' " under the federal anti-kickback statute. Id. Here, as in Kester , a drug manufacturer (MedImmune) is alleged to have provided a pharmacy (Trinity) with valuable information: PHI. (Compl. ¶ 12.) PHI was provided with the expectation that it would lead Trinity to potential candidates for Synagis, and that Trinity would "recommend" Synagis to these patients and their physicians. (Id. ¶ 11.) Applying the logic of Kester , the Court finds that PHI could constitute a form of remuneration under the federal anti-kickback statute. Indeed, courts in this district, and other courts around the country, have given remuneration a similarly expansive scope. See, e.g. , United States v. Narco Freedom, Inc. , 95 F.Supp.3d 747, 756 (S.D.N.Y. 2015) ("Federal courts consistently have held that remuneration is not limited to out-and-out bribes."); United States ex rel. Freedman v. Suarez-Hoyos , 781 F.Supp.2d 1270, 1281 (M.D. Fla. 2011) (stating that the "provision of pathology reports" to a doctor can constitute remuneration under the federal statute);
*553 United States ex rel. Westmoreland v. Amgen, Inc. , 738 F.Supp.2d 267, 273 (D. Mass. 2010) (excess overfill in vials constitutes remuneration); United States v. The Health All. of Greater Cincinnati , 03-cv-00167, 2008 WL 5282139, at *8 (S.D. Ohio Dec. 18, 2008) ("[T]he Anti-Kickback statute was amended to add the term 'remuneration' when investigations showed kickbacks [were becoming] ... more than just cash payments.").
Defendant's assertion that PHI cannot constitute "remuneration" because it "does not have an independent and objective 'fair market' value" (Doc. No. 124 at 9) is equally unpersuasive. Even if "fair market value" is the proper lodestar for assessing whether or not a given item amounts to "remuneration" - and the Court is doubtful of that premise - New York adequately pleads that PHI had such market value. Given that PHI revealed a host of proprietary data about infants in the NICU, it is obvious that PHI retained more than just "nominal value" since it was instrumental in developing leads targeting particular doctors and patients. United States ex rel. Wood v. Allergan, Inc. , 246 F.Supp.3d 772, 809 (S.D.N.Y. 2017) ; see also United States ex rel. Knight v. Reliant Hospice, Inc. , 08-cv-3724 (CMC), 2011 WL 6130533, at *2 (D.S.C. Dec. 8, 2011) (sharing of private health information could form basis for fraudulent scheme in violation of the FCA). In sum, the Court is satisfied that New York has adequately pleaded that the sharing of PHI with specialty pharmacies could plausibly constitute "remuneration" in violation of the federal anti-kickback statute.
MedImmune also argues that New York has not alleged the existence of a quid pro quo between MedImmune and Trinity, since "Trinity provided nothing to MedImmune in return that can fairly be characterized as a 'referral of services' or the 'purchase, lease or order' of anything." (Doc. No. 124 at 12.) But the federal anti-kickback statute also prohibits "recommend[ing]" the purchase of any good or item. 42 U.S.C. § 1320a-7b(b)(2)(B). And New York explicitly, and repeatedly, points out that MedImmune provided "remuneration to Trinity [in the form of PHI] to induce referrals of Synagis." (Compl. ¶ 92.) Indeed, the "more than 1250 baby leads and/or referrals" to Trinity "resulted in millions of dollars in Synagis Medicaid claims ... presented [to New York]." (Id. ) The Complaint-in-Intervention clearly alleges that MedImmune sought to induce Trinity to "recommend Synagis" to patients and doctors. (Id. ¶ 198.) The quo , according to the Complaint-in-Intervention, is obvious: Trinity would recommend Synagis to patients and doctors, thereby "increas[ing] sales of Synagis for MedImmune paid for with public funds." (Id. ¶ 120.) For all these reasons, the Court is persuaded that the Complaint-in-Intervention has adequately alleged a violation of the federal anti-kickback statute.[4]
2. False Certification
Having failed with respect to its arguments regarding the federal anti-kickback statute, MedImmune next insists that the representations made in the Medicaid billing certifications were not false statements as required under the NYFCA. Once again, MedImmune reads the relevant statute too narrowly.
The NYFCA contemplates two types of falsity: factual falsity and legal falsity. Kester , 41 F.Supp.3d at 329. The former refers to a situation where "the party submitting the claim supplies 'an *554 incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.' " Id. (quoting Mikes v. Straus , 274 F.3d 687, 696 (2d Cir. 2001) ). The latter speaks to a claim that is false "because it has been tainted by some underlying statutory, regulatory, or contractual violation made in connection with that claim." Id. Here, the Complaint-in-Intervention clearly proceeds on a theory of legal falsity. (Compl. ¶ 194 ("[The] false records or statements or omissions were Trinity's false certifications ... that the services were provided in compliance with all applicable State and Federal laws and regulations.").)
Legal falsity comes in two forms. First, there is an "express false certification," which constitutes "a claim that falsely certifies compliance with a ... statute, regulation or contractual term, where compliance is a prerequisite to payment." Mikes v. Straus , 274 F.3d 687, 698 (2d Cir. 2001), abrogated on other grounds by Universal Health Servs., Inc. v. United States , --- U.S. ----, 136 S.Ct. 1989, 195 L.Ed.2d 348, (2016). And then there is an "implied false certification" theory, in which "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, [where] those omissions ... render the defendant's representations misleading with respect to the goods or services provided." Universal Health Servs., Inc. , 136 S.Ct. at 1999. Since New York adopts an "express" false certification theory of liability (Doc. No. 181 at 17-19), and only belatedly (and casually) mentions the implied certification theory of liability (id. at 19 n.18), the Court will limit its analysis to whether the Complaint-in-Intervention pleads facts demonstrating an express false certification.
MedImmune argues that because Trinity's Medicaid Certification Statements ("Certification Statements") only certify that "the signatory has 'furnished the care, services and supplies ... in accordance with applicable federal and state laws and regulations' " (Doc. No. 124 at 14 (quoting Compl. Ex. B; Compl. ¶¶ 59, 184) ), the Certification Statements are too generalized to satisfy the requirement that it reference a "particular" statute or regulation. The Court disagrees.
While MedImmune insists that the Certification Statements do not reference compliance with a "particular" statute or regulation, the Second Circuit has specifically rejected this argument. See Bishop v. Wells Fargo & Co. , 870 F.3d 104, 106 (2d Cir. 2017) (per curiam). In Bishop , the Second Circuit held that the materiality requirement announced by the Supreme Court in Universal Health Services , --- U.S. ----, 136 S.Ct. 1989, 195 L.Ed.2d 348 (2016), "abrogated Mikes 's particularity requirement for express false certification claims." Bishop , 870 F.3d at 107. Specifically, Bishop concluded that there was "no textual support in the FCA for Mikes 's particularity requirement," and that a "rigorous materiality standard" would address the concerns that originally animated Mikes 's particularity requirement - namely, "concerns about fair notice and open-ended liability." Id.
Having misstated the legal standard, MedImmune relies on cases that reference the now-discredited "particularity" requirement of Mikes ; as such, they are of dubious value. For instance, MedImmune cites to United States ex rel. Colucci v. Beth Israel Med. Ctr. , 785 F.Supp.2d 303, 315 (S.D.N.Y. 2011), for the proposition that "[g]eneral certifications of compliance with the law are insufficient." Id. But Colucci specifically relied on the since-discarded pre- Bishop formulation that express falsity requires "compliance with a *555 particular statute." Id. (emphasis in original) (quoting Mikes , 274 F.3d at 698 ).
Given Bishop 's rejection of the "particularity" requirement, the Court agrees with Chief Judge McMahon's conclusion in Kester - involving the very certification forms at issue here - that "a certification of compliance with 'all applicable Federal laws' is [an] express certification of compliance with a statute." United States v. TEVA Pharm. USA, Inc. , No. 13-cv-3702 (CM), 2016 WL 750720, at *24 (S.D.N.Y. Feb. 22, 2016). In light of New York's well-pleaded federal anti-kickback allegations, the Certification Statements falsely certified compliance with "applicable federal and state laws and regulations" (Compl. ¶ 59), thereby stating a claim that MedImmune caused Trinity to submit "false record[s] or statement[s]," N.Y. State Fin. Law § 189(1)(b), or "false or fraudulent claim[s]," N.Y. State Fin. Law § 189(1)(a), (b).
MedImmune briefly argues that it did not "cause" Trinity to submit the Certification Statements because they did not "play[ ] any role in Trinity's submission of the certifications themselves." (Doc. No. 188 at 6; Doc. No. 124 at 13.) But this argument "borders on the frivolous," since courts have long recognized that "the FCA reaches claims that are rendered false by one party, but submitted to the government by another." Feldman , 808 F.Supp.2d at 650 (internal quotation marks and citation omitted).
Additionally, the Complaint-in-Intervention satisfies Rule 9(b) because "[w]here numerous false claims are involved, the plaintiff may satisfy Rule 9(b) by providing sufficient identifying information about those false claims, or by providing example false claims that enable the defendant to identify similar claims." United States ex rel. Forcier v. Computer Scis. Corp. , No. 12-cv-1750 (DAB), 2017 WL 3616665, at *6 (S.D.N.Y. Aug. 10, 2017). The fact that these certifications "appl[y] to all claims presented to Medicaid" (Compl. ¶ 64) (emphasis added), "supports a strong inference that false claims were submitted to the government," United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc. , 865 F.3d 71, 85 (2d Cir. 2017). The Court therefore finds that New York has satisfied Rule 9(b) with respect to both Section 189(1)(a) and (1)(b). See N. Adult Daily Health Care Ctr. , 205 F.Supp.3d at 292 ("Relators have satisfied Rule 9(b) by alleging 'a complex and far-reaching scheme' and providing 'representative samples' of Defendants' misconduct as part of that scheme.") (quoting United States v. Bank of N.Y. Mellon , 941 F.Supp.2d 438, 481-82 (S.D.N.Y. 2013) ).
Accordingly, New York has adequately alleged that MedImmune made false statements under the NYFCA.
3. Materiality
Finally, MedImmune argues that New York's NYFCA claims must be dismissed because the allegedly false statements in the Medicaid billing certifications were simply not material. As noted above, Section 189(1)(b) prohibits making "a false record or statement material to a false or fraudulent claim." N.Y. State Fin. Law § 189(1)(b) (emphasis added). This materiality standard is "demanding," because "[t]he False Claims Act is not 'an all-purpose antifraud statute.' " Universal Health Servs. , 136 S.Ct. at 2003 (quoting Allison Engine Co. v. United States ex rel. Sanders , 553 U.S. 662, 672, 128 S.Ct. 2123, 170 L.Ed.2d 1030 (2008) ).[5]
*556 Relying on the Supreme Court's discussion in Universal Health Services , courts confronting the issue of materiality must ask whether the conduct at issue has "a natural tendency to influence, or [is] capable of influencing, the payment or receipt of money or property." 136 S.Ct. at 2002 (citing 31 U.S.C. § 3729(b)(4) ). Here, the Court agrees with the conclusion, adopted by several other courts in this Circuit, that "compliance with the [federal anti-kickback statute] is a 'material' condition of payment" for Medicaid reimbursements. Allergan, Inc. , 246 F. Supp.3d at 818, rev'd and remanded on other grounds , 899 F.3d 163 (2d Cir. 2018). Alleged violations of the federal anti-kickback statute cannot seriously be said to constitute merely "minor or insubstantial" noncompliance. Universal Health Servs. , 136 S.Ct. at 2003. Indeed, violations of the federal anti-kickback statute carry criminal penalties of up to five years in prison. 42 U.S.C. § 1320a-7b. Moreover, the statute was amended in 2010 to state bluntly that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the False Claims Act]." 42 U.S.C. § 1320a-7b(g). The amendment thus "made clear that compliance with the [federal anti-kickback statute] is a precondition to the reimbursement of claims, not just a condition of participation." Kester , 41 F.Supp.3d at 336.
Even prior to 2010, "the overwhelming weight of authority" on this issue was that "compliance with the statute was such a precondition [to payment]." Id. In that sense, the amendment codified a preexisting understanding that anti-kickback violations are "serious and would have affected the government's decision to reimburse the pharmacies prior to 2010." Id. at 364 ; see also New York v. Amgen Inc. , 652 F.3d 103, 113 (1st Cir. 2011) ("Given that the absence of ... kickbacks is a precondition of being entitled to payment under these Medicaid programs, the reimbursement claims submitted ... represented that there had been compliance with a material precondition of payment that had not been met." (internal quotations omitted) ); McNutt ex rel. United States v. Haleyville Med. Supplies, Inc. , 423 F.3d 1256, 1260 (11th Cir. 2005) ("Compliance with the [federal anti-kickback statute] is necessary for reimbursement under the Medicare program.").
Put simply, anti-kickback statutes are important pieces of the governmental healthcare apparatus, ensuring that claims presented for reimbursement are the product of untainted and independent medical judgment. Understandably, then, "courts, without exception, agree that compliance with the Anti-Kickback Statute is a precondition of Medicare payment." United States ex rel. Westmoreland v. Amgen, Inc. , 812 F.Supp.2d 39, 54 (D. Mass. 2011). Against this backdrop, New York has plausibly alleged that the purported violations were material.
B. Remaining Claims
In addition to its NYFCA claim, New York also brings claims alleging violations of New York Social Services Law § 145-b, New York Executive Laws §§ 63(12) and 63-c, and unjust enrichment. MedImmune moves to dismiss those claims as well. (Doc. No. 124 at 18-20.)
New York Social Services Law § 145-b makes it "unlawful for any person ... knowingly by means of a false statement or representation, or by deliberate concealment of any material fact[,] ... to attempt to obtain or to obtain payment from public funds for services or supplies furnished." N.Y. Soc. Serv. Law § 145-b.
*557 MedImmune argues that this claim should be dismissed because the "Social Services Law does not impose liability for causing another to make a misrepresentation." (Doc. No. 124 at 18-19.) But Section 145-b clearly provides that "[w]here public welfare benefits are obtained fraudulently by an entity ... the individual supervising, overseeing, performing or conspiring to effectuate the fraudulent acts can be held personally responsible, and is liable for treble damages." People v. Brooklyn Psychosocial Rehab. Inst. , 185 A.D.2d 230, 234, 585 N.Y.S.2d 776 (2d Dep't 1992). Here, New York has expressly alleged that MedImmune conspired to target Medicaid patients through the use of improperly obtained PHI. The Complaint-in-Intervention clearly alleges that this was a sophisticated scheme carried out by industry leaders who understood what they were doing. Therefore, New York has adequately pleaded a violation of Section § 145-b.
New York's claims under New York Executive Laws §§ 63(12) and 63-c are also sufficiently pleaded. MedImmune recognizes that these provisions do not "create a new cause of action, but rather give[ ] an additional remedy upon which the State can recover." (Doc. No. 124 at 19). Therefore, MedImmune's arguments for dismissal are premised on the contention there is no valid NYFCA or Section 145-b claim to permit recovery under Sections 63(12) and 63-c. However, since the Court has denied MedImmune's motion to dismiss the NYFCA and Section 145-b claims, it necessarily follows that this derivative motion must also be denied.
Finally, the Court rejects MedImmune's motion to dismiss the state's unjust enrichment claim. Under New York law, unjust enrichment requires (1) that the defendant was enriched, (2) at the plaintiff's expense, and (3) it would be inequitable for the defendant to retain the benefit. Phillips Int'l Inv. LLC v. Pektor , 117 A.D.3d 1, 4, 982 N.Y.S.2d 98 (1st Dep't 2014). As the discussion above makes clear, New York plausibly alleges that MedImmune engaged in a scheme designed to present false claims to the state for reimbursement, which had the end purpose of enriching MedImmune by "increasing sales of Synagis." (Compl. ¶ 12.) Moreover, MedImmune only argues that the claim should be dismissed because "the State has failed to otherwise plead a viable cause of action." (Doc. No. 124 at 20.) But given the Court's rulings with respect to the NYFCA and Section 145-b claims, MedImmune's motion to dismiss the unjust enrichment claim on this ground must also be denied. United States ex rel. Bilotta v. Novartis Pharm. Corp. , 50 F.Supp.3d 497, 539 (S.D.N.Y. 2014) (rejecting motion to dismiss Section 145-b, Sections 63(12) and 63-c, and unjust enrichment claims because underlying FCA violation was well-pleaded).
IV. CONCLUSION
For the reasons set forth above, MedImmune's motion to dismiss the Complaint-in-Intervention is DENIED. The Clerk is respectfully directed to terminate the motion pending at docket number 124.
IT IS HEREBY ORDERED THAT, by October 11, 2018, the parties shall submit to the Court a proposed case management plan and scheduling order. A template for the order is available at: http://www.nysd.uscourts.gov/judge/Sullivan. IT IS FURTHER ORDERED THAT the parties shall appear for a status conference on October 19, 2018 at 3:00 p.m in Courtroom 905 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.
SO ORDERED.

The facts set forth in this opinion and order are taken from the Complaint-in-Intervention (Doc. No. 49), Vierczhalek's original complaint (Doc. No. 70) and amended complaint (Doc. No. 102), and documents incorporated therein by reference. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd. , 493 F.3d 87, 98 (2d Cir. 2007). The Court has also considered MedImmune's memorandum of law in support of its motion to dismiss (Doc. No. 124), New York's memorandum of law in opposition to MedImmune's motion to dismiss (Doc. No. 181), and MedImmune's reply memorandum of law in support of its motion (Doc. No. 188).

The states are California, Delaware, Florida, Georgia, Illinois, Indiana, Michigan, Montana, Nevada, New Jersey, New Mexico, New York, Oklahoma, Rhode Island, Tennessee, Texas, and Wisconsin, and the Commonwealths of Virginia and Massachusetts. (Original Compl.).

While New York does not allege a substantive violation of subsection (1)(a), it does allege a conspiracy to violate that provision (Compl. ¶ 200), thereby requiring consideration of subsection (a). Moreover, it bears noting that "Courts generally treat these two provisions [subsections (a) and (b) ] together, as their elements overlap significantly." United States ex rel. Hussain v. CDM Smith, Inc. , 14-CV-9107, 2017 WL 4326523, at *8 (S.D.N.Y. Sept. 27, 2017).

However, because the Court finds that New York adequately pleads a violation of the federal anti-kickback statute, it does not address whether New York sufficiently pleads a violation of either the state anti-kickback statute or state Medicaid regulations.

The materiality standard applies to Section 189(1)(a) as well. See, e.g. , United States v. Visiting Nurse Serv. of New York , No. 14-cv-5739 (AJN), 2017 WL 5515860, at *6 & n.3 (S.D.N.Y. Sept. 26, 2017).